[Crim. No. 12308.   Second Dist., Div. Five.   Aug. 25, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. ADAM DEANDA CHAVIRA, Defendant and Appellant.

Ronald M. Sohigian, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Lawrence E. Mindell, Deputy Attorney General, for Plaintiff and Respondent.

STEPHENS, J.—Defendant Adam Deanda Chavira was charged by information with violation of section 11500 of the Health and Safety Code (possession of narcotics).

Trial without jury was held on September 10, 1963, and defendant was adjudged guilty. On October 2, 1963, the date set for sentencing, criminal proceedings were adjourned, and defendant was remanded to the custody of the sheriff, who was ordered to file a petition in department 95 of the superior court pursuant to section 6451 of the Penal Code[1] in order

[1]Now section 3051, Welfare and Institutions Code.

that an examination and hearing could be had to determine whether the defendant was addicted to the use of narcotic drugs or was in imminent danger of becoming addicted. On January 26, 1966, defendant returned to court and at this time probation was denied and the defendant was sentenced to prison for the term prescribed by law.

Defendant appeals from the judgment, urging that evidence used to convict him was obtained by unlawful search and seizure and that statements were introduced in violation of the doctrines set forth in *Escobedo* v. *Illinois* (1964) 378 **U.S.** 478 [12 L.Ed.2d 977, 84 S.Ct. 1758] and *People* v. *Dorado* (1965) 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361].

The circumstances surrounding the arrest of the defendant were as follows: On or about the 11th of March 1963, Manuel Diaz, a narcotic agent for the State of California, received a telephone call from one Joseph Garcia. Garcia was an informant, and had on 10 previous occasions given Diaz reliable information leading to arrests for narcotic violations. Diaz last had heard from Garcia some three months prior to this call. Garcia always contacted Diaz by telephone using the name of ''Joe.'' On this occasion Garcia called from the county jail, where he then was a prisoner.

Diaz and R. T. Pizzo, a Los Angeles police department narcotic officer, went to the jail and talked to Garcia. Diaz testified Garcia gave the following information: ''Male Mexican approximately 20 years of age, 5 feet 10 inches, 150 pounds, brown hair, brownish-greenish eyes, responding to the name of Adam Chavira, was selling heroin at a cafe, I believe the name was La Gloria Cafe at 4512 East Dunham. That this male Mexican . . . would arrive in the morning and sell heroin and also in the afternoon and sell heroin. He also gave me the names of other people that came to the location to sell heroin.'' It was admitted that this description could fit many people.

Diaz returned to his office after receiving this information and looked through the criminal identification and investigation ''rap'' sheets, finding one with defendant's name on it. This sheet contained the information that Chavira had previously been arrested for a narcotics violation. It was shown at the trial that defendant had served a 30-day sentence in 1961 for a misdemeanor violation involving barbiturates.

On the following day, March 14, 1963, Diaz went to the cafe, but did not observe the defendant there. Diaz returned the next day with Pizzo and an agent named Chadwick at approximately 9:45 a.m. The three entered the cafe, which

was then occupied by two customers, a waitress, and the cook. The officers had neither a search warrant nor a warrant for the arrest of defendant or any other person. Diaz stood at the door with his partners behind him and began to examine customers as they entered the cafe for evidence of recent narcotics usage. Two persons were thus examined and questioned before the defendant approached the cafe. At about 10 a.m., 15 minutes after the officers first arrived at the cafe, defendant was seen approaching the cafe. Diaz stepped outside and accosted him a few feet from the door.

The testimony of Diaz as to what occurred was that he identified himself by showing his badge and saying, "Narcotic officer." He then asked defendant if his name was "Adam." Defendant replied, "Yes." Diaz asked, "Do you have any narcotics on you?" The reply was a shrug of the shoulders, a step backwards, and either the remark, "I know you've got me," "I know you got me," or "Yeah, I know." At this time defendant's hand was observed to be in his left front pants' pocket. He began to remove his hand, at which time Diaz grabbed the hand and felt the outside of the pocket. He then asked defendant to remove his hand slowly, and then Diaz reached into the pocket and pulled out a red balloon containing 10 capsules, inside of which was a white powder later analyzed as heroin. The search was premised upon the officer's belief that defendant had narcotics on him.

Defendant was then placed under arrest for the possession of heroin. Defendant was asked about the balloon. The substance of this conversation was defendant's statement: "Yes, you got me dirty. I've been using now for some time." Diaz then took defendant to the cafe, where he was detained by the agents.

## Search and Seizure

■ There being no warrant for the arrest or search of defendant, there must be sufficient facts known to the officer to justify the arrest under Penal Code section 836.[2] We have concluded that the officer had reasonable or probable cause sufficient to justify the arrest and search of defendant.

The information upon which the agent acted was a description which included defendant's name, obtained from a known informer who had proven reliable on prior occasions. This information was that defendant was selling heroin at the

---

[2] Penal Code section 836: "A peace officer . . . may without a warrant, arrest a person; . . . 3. Whenever he has reasonable cause to believe that the person to be arrested has committed a felony."

cafe. Information from a known and reliable informant can justify an arrest. (*People* v. *Melchor* (1965) 237 Cal.App.2d 685, 689 [47 Cal.Rptr. 235].)

The officer ascertained the fact that a man with defendant's name was found to have a prior narcotic violation. At the location of the cafe specified by the informer, a man bearing the description given identified himself as having the first name of "Adam." In addition to the description, name and location (which had proved reliable), the information Diaz possessed included the accusation that defendant had sold heroin at the cafe. There were, then, adequate facts known to officer Diaz to give probable cause for the search.

### Custodial Interrogation

Under the circumstances before us, after the identity of "Adam" had been established, it is obvious that the stage of investigation had focused upon defendant to the point of accusation. Clearly, it tests credulity to say that Diaz would have permitted the defendant to leave; Diaz had found the very person he had been informed about, and his pattern of action on that very day belies any suggestion short of accusation. Certainly the next question posed by Diaz ("Do you have any narcotics on you?") was nothing but the process of interrogation that lent itself to eliciting incriminatory statements. (*People* v. *Stockman* (1965) 63 Cal.2d 494, 498-499 [47 Cal.Rptr. 365, 407 P.2d 277].) As stated above, while we conclude that defendant was in fact in custody once Diaz had established the identity of defendant, less than the actual arrest may exist at the time the accusatory stage has matured. (*People* v. *Furnish* (1965) 63 Cal.2d 511, 516 [47 Cal.Rptr. 387, 407 P.2d 299].)

The existence of custody as an element of the accusatory stage does not depend upon the subjective intent of the interrogator but upon whether defendant is placed in a situation in which he reasonably believes that his freedom of movement is restricted by pressures of official custody. (*People* v. *Kelley* (1967) 66 Cal.2d 232, 247 [57 Cal.Rptr. 363, 424 P.2d 947); *People* v. *Arnold* (1967) 66 Cal.2d 438, 445-448 [58 Cal.Rptr. 115, 426 P.2d 515].) In confirmation of the conclusion we have reached, the record clearly discloses that it was the intent of Diaz to search the defendant (for narcotics) once defendant had acknowledged the fact that his name was "Adam."[3]

---

[3] "Q. And on the basis of that, you started searching the defendant, is that correct? A. No, sir. Q. On what other basis? A. The basis that he told me his name was Adam."

██ *Escobedo* v. *Illinois, supra,* 378 U.S. 478 and *People* v. *Dorado, supra,* 62 Cal.2d 338 have concerned themselves with the process of interrogation.[4] The period of interrogation may last from several minutes to several hours, or be as here, extremely abrupt. Except as statements may be construed as voluntary, the time element involved does not negate the necessity to admonish relative to constitutional rights. In this case, confrontation took place on a public sidewalk outside of a public cafe. It is apparent from the actions of Diaz that defendant believed himself restrained without reasonable means of escape. It is clear that defendant's statements were not of a voluntary type. That defendant made his incriminating remarks readily in response to questions rather than at the end of a long interview would seem unimportant. What is important is that at a stage when defendant was entitled to the warnings of constitutional rights, he received none, and the incriminating statements promptly were uttered. The statements taken in the total context of the arrest are sufficient to amount to a confession, and thus the admission at the trial was prejudicial and requires a reversal. (*People* v. *Dorado, supra.*)

The judgment is reversed.

Kaus, J., and Hufstedler, J., concurred.

---

[4]The present case was tried before the decision was rendered in *Escobedo* v. *Illinois, supra,* 378 U.S. 478 and before the decision in *Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]. The decision in the present case, however, was not final before the decision in *Escobedo.* The principles enunciated in *Escobedo* and *People* v. *Dorado, supra,* 62 Cal.2d 338, but not those in *Miranda* are therefore applicable here. (*In re Lopez* (1965) 62 Cal.2d 368 [42 Cal. Rptr. 188, 398 P.2d 380]; *People* v. *Rollins* (1967) 65 Cal.2d 681 [56 Cal.Rptr. 293, 423 P.2d 221].)