FORD, P.J.
 

 The defendant was accused of the crime of possession of marijuana (Health & Saf. Code, § 11530) and of the crime of rape (Pen. Code, § 261, subd. 5), it being alleged that he had an act of sexual intercourse with a named woman “who was at the time unconscious of the nature of the act and this was known by the defendant.” Two prior narcotics convictions were alleged. In a nonjury trial the defendant was found guilty of the charge of possession of marijuana but he was acquitted of the crime of rape.
 
 [1]
 
 The allegations as to prior convictions were found to be true. The defendant’s motion for a new trial was denied. Probation was denied and the defendant was sentenced to be punished by imprisonment in the state prison for the term prescribed by law with respect to the offense of which he was convicted. He has appealed from the judgment.
 

 The principal questions presented on this appeal are whether there was probable cause for the arrest of the defendant and, if there was such cause, whether the search of his clothing made at the time of the arrest was warranted as incident thereto. Pertinent portions of the record will be noted.
 

 Upon the hearing of the motion to suppress the evidence as to the marijuana on the ground that it was obtained as the result of an illegal search and seizure, Officer Vazquez of the Oxnard Police Department was called as a witness. He testified that on March 23, 1966, at approximately 3 p.m. while he was on duty in a police vehicle, he received a radio call. He went to the Jiminez house and was admitted by Mrs. Jiminez, who pointed toward the den and said, “My husband has him in the den.” As the officer entered the den he observed Mr. Jiminez standing near the bathroom door. The officer looked in the bathroom and saw the defendant; he was nude except for his socks. The physical appearance of the defendant indicated that he had recently participated in an act of sexual
 
 *162
 
 intercourse.
 
 [2]
 
 The officer then walked toward a couch on which a woman, Betty Moya, covered with a blanket, was lying. Pie uncovered her and observed that she was partially unclothed; her panties and eapris were around the ankle of her right leg and she was nude below the waist. She was not wearing a blouse. Her face “appeared pale and white in color.” Her eyelids were covering her pupils. When he lifted her eyelids he noticed that the pupils were dilated. She neither moved nor spoke and she appeared to be unconscious. Mr. Jiminez told the officer that the housekeeper had been raped.
 

 As to what he then did, Officer Vazquez testified: “I approached the defendant, I asked him if he had had sexual intercourse with the person lying on the couch, and he stated yes. I asked him if she had given him permission and he stated yes. I asked him why she was in that state, the unconscious state, and he stated apparently that she had—was under the influence of some wine.” The officer further testified that he 11 did not smell any alcoholic beverage at all. ’ ’ He placed the defendant under arrest for rape, handcuffed him and asked him to sit down on a seat in the bathroom. He advised the defendant of his rights. Then the officer requested police assistance.
 

 Officer Vazquez further testified that before the defendant’s clothing was searched, Lieutenant Hawkins, Detective Zipav, and Detective Jones arrived and were in the house with him. The defendant said that he wanted his clothes, which were on a chair in the den. They consisted of a pair of trousers, a shirt, underwear and shoes. Lieutenant Plawkins told the defendant to dress, hut before he had completed the act of getting into his trousers, Lieutenant Hawkins told Officer Vazquez to search the trousers. The officer did so. Upon handling the outside of the trousers he felt a hard object in the right front pocket, put his hand therein, and removed a “brown paper folded up” which “appeared like maybe something could have been inside of this paper.” Upon opening the paper he found what appeared to be three marijuana cigarettes, one of which was 1 ‘ half smoked. ’ ’
 

 The motion to suppress the evidence as to the marijuana was denied.
 

 With respect to the matters pertinent on this appeal, the testimony of Officer Vazquez at the trial was in substance the
 
 *163
 
 same as that given by him at the hearing on the motion to suppress evidence. The advice as to his rights given to the defendant was related by Officer Vazquez as follows: “I advised him that he had a right to an attorney and anything he stated could be used against him. ’ ’
 

 At the trial Lieutenant Hawkins testified that as a result of what Officer Vasquez told him after his arrival at the Jiminez home he knew that the defendant was under arrest for a felony. The defendant requested his clothing. Lieutenant Hawkins told Officer Vazquez to remove the handcuffs and to give the clothing to the defendant. When the defendant started to put on his trousers, Lieutenant Hawkins told Officer Vazquez to search the clothing and Officer Vazquez did so.
 

 The cross-examination of Lieutenant Hawkins was as follows : “Q. Lieutenant Hawkins, at the time that you requested Officer Vazquez to search the defendant’s clothing, you weren’t looking for marijuana, were you? A. Not particularly, no, sir. Q. As a matter of fact, you weren’t looking for any drug of any kind; is that
 
 correct?
 
 A. I didn’t know what T was looking for, sir. ’ ’
 

 The defendant did not testify.
 

 We turn first to the question as to whether there was probable cause for the arrest of the defendant at the Jiminez home on the charge of rape. “Reasonable or probable cause for an arrest has been the subject of much judicial scrutiny and decision. There is no exact formula for the determination of reasonableness. Bach case must be decided on its own facts and circumstances [citations]—and on the total atmosphere of the ease. [Citations.] Reasonable cause has been generally defined to be such a state of facts as would lead a man of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that the person is guilty of a crime. [Citations.] Probable cause has also been defined as having more evidence for than against; supported by evidence which inclines the mind to believe, but leaves some room for doubt. [Citations.] It is not limited to evidence that would be admissible at the trial on the issue of guilt. [Citation.] The test is not whether the evidence upon which the officer acts in making the arrest is sufficient to convict but only whether the person should stand trial. [Citation.] ”
 
 (People
 
 v.
 
 Ingle,
 
 53 Cal.2d 407, 412-413 [2 Cal.Rptr. 14. 348 P.2d 577].)
 

 It is obvious that the appearance of the defendant and
 
 *164
 
 that of the woman on the couch readily and reasonably led to the conclusion that an act of sexual intercourse had occurred. Moreover, the woman’s appearance was such that the officer was reasonably justified in concluding that she was in a state of unconsciousness. The circumstances constituted such a state of facts as would lead a man of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that the defendant was guilty of the crime of rape accomplished under circumstances where the female involved was at the time unconscious of the nature of the act and which fact was known to the defendant. (Pen. Code, § 261, subd. 5.) Consequently, there was probable cause for the arrest of the defendant.
 

 The determination just stated is not subject to successful challenge under the reasoning of
 
 Escobedo
 
 v.
 
 Illinois,
 
 378 U.S. 478 [12 L.Ed. 2d 977, 84 S.Ct. 1758], and
 
 People
 
 v.
 
 Dorado,
 
 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361]. It is true that, as earlier noted in this opinion, Officer Vazquez did not inform the defendant of his constitutional rights prior to questioning him as to whether he had had sexual intercourse with the woman, as to whether she had consented, and as to the reason why she appeared to be unconscious. But such inquiry did not constitute a process of interrogation that lent itself to eliciting incriminating statements. The inquiry was of an investigative nature, the sole purpose thereof being to determine whether in fact a crime had been committed.. (See
 
 People
 
 v.
 
 Washington,
 
 237 Cal.App.2d 59, 64 [46 Cal.Rptr. 545].) Except for the admission that an act of intercourse had occurred, the answers given by the defendant were of an exculpatory character in that he stated that the intercourse had been with the woman’s consent and in that he explained that her apparent unconsciousness was due to overindulgence in the use of wine. But, even assuming that there was a violation of the
 
 Escobedo-Dorado
 
 rule, the trial court could reasonably draw the inference that such inquiry had no appreciable effect with respect to the officer’s decision to arrest the defendant. Entirely apart from that conversation, the circumstances which the officer observed constituted probable cause for the arrest.
 

 Not all searches are prohibited by the Fourth Amendment but only those which are unreasonable.
 
 (United States
 
 v.
 
 Rabinowitz,
 
 339 U.S. 56, 60 [94 L.Ed. 653, 657, 70 S.Ct. 187].) “Unquestionably, when a person is lawfully arrested, the police have the right, without a search warrant, to make a
 
 *165
 
 contemporaneous search of the person of the accused for weapons or for the fruits of or implements used to commit the crime.”
 
 (Preston
 
 v.
 
 United States,
 
 376 U.S. 364, 367 [11 L.Ed.2d 777, 780, 84 S.Ct. 881].)
 

 In the present case, however, it is urged on behalf of the defendant that the search of his person was unreasonable, the core of the argument being as follows: “The record here presented clearly reveals that the officers conducting the search had no stated objective; indeed, the senior officer present on the scene, Lt. Hawkins, openly admitted that he was not looking for marijuana or other drugs and, in fact, did not know what he was looking for. Thus, in the arresting officer’s own version of the premise of the search of appellant’s clothing, the search can only be described as of a general exploratory nature.” As will be hereinafter explained, that contention is untenable.
 

 It is, of course, true that if an arrest is a mere pretext for a search, the search is not reasonable.
 
 (People
 
 v.
 
 Haven,
 
 59 Cal.2d 713, 719 [31 Cal.Rptr. 47, 381 P.2d 927].) But in the present case the record shows that the officers were acting in good faith with respect to the arrest and the ensuing search. Under such circumstances the question of the reasonableness of the search must be resolved on the basis of an objective criterion. Thus, in
 
 People
 
 v.
 
 Castro,
 
 249 Cal.App.2d 168 [57 Cal.Rptr. 108], a case where the search warrant was issued upon legally insufficient affidavits, the court stated (page 176): “Thus it is arguable that this entry was illegal because the officers’ subjective intent was to search pursuant to an invalid warrant, rather than to arrest a man who was subject to a lawful nonwarrant arrest. For all we know, they might not have made an arrest if the search had produced no evidence. But we do not think any such supposed subjective intent renders unlawful an entry and seizure which the law authorized upon the basis of facts then within the knowledge of the officers.” (See also
 
 People
 
 v.
 
 Chilton,
 
 239 Cal.App.2d 329, 331 [48 Cal.Rptr. 212].)
 

 Regardless of Lieutenant Hawkins’ testimony as to his state of mind at the time of the search, heretofore related, the search was reasonable. The governing law is stated in
 
 People
 
 v.
 
 Kraps,
 
 238 Cal.App.2d 675, at pages 679-680 [48 Cal.Rptr. 89] : “The search which followed the arrest was proper because it was incident to a lawful arrest. [Citations.] Defendant urges that the search was unlawful because it lacked a definite purpose and was unreasonable in its scope.
 
 *166
 
 Specifically defendant argues that since the arrest was for a traffic offense there was no purpose justifying the search. It is well established that upon lawfully arresting a suspect the police are entitled to conduct a cursory search for weapons. [Citations.] Accordingly, since the search of defendant’s person was lawful, the fact that it turned up marijuana instead of weapons did not render the marijuana inadmissible in evidence.[
 
 3
 
 ] Police officers acting properly in the course of their duty in making a search of a person or premises are not required to blind themselves to contraband which is in plain sight simply because it is disconnected with the initial purpose of the search. [Citations.] Moreover, the fact that the search was not connected with the offense stated in the traffic warrant did not render the seizure of the marijuana illegal. [Citations.] ”
 
 [4]
 

 
 *167
 
 The reasonableness of the search in the present ease is readily apparent in that the officers, in addition to searching for weapons, were warranted in determining whether the defendant was in possession of any drug of a nature capable of bringing about the woman’s state of apparent unconsciousness which they witnessed. There was no error.
 

 The defendant’s final contention is that the evidence was insufficient to support a finding that the defendant knowingly possessed marijuana. It is argued that the defendant was “separated from his personal clothing for upwards of an hour, with numerous other persons milling around, some of them obviously hostile, and all with access to the clothing.” It is asserted that under such circumstances it cannot be said that the clothes or the contents thereof were in the defendant’s custody, either actual or constructive. The contention is untenable. The evidence supported the inference that no other person in the room had placed anything in the defendant’s trousers and that the articles found by Officer Vazquez were in the trousers at the time the defendant disrobed. The fact that the marijuana cigarettes were found in the defendant’s clothing justified the inference of knowledge on his part of their presence.
 
 (People
 
 v.
 
 Contreras,
 
 211 Cal.App.2d 641, 648 [27 Cal.Rptr. 619];
 
 People
 
 v.
 
 Calderon,
 
 205 Cal.App.2d 566, 569 [23 Cal.Rptr. 62] ;
 
 People
 
 v.
 
 Martinez,
 
 169 Cal.App.2d 242, 245 [336 P.2d 988].)
 

 The judgment is affirmed.
 

 Cobey, J., and Moss, J., concurred.
 

 A petition for a rehearing was denied November 2, 1967, and appellant’s petition for a hearing by the Supreme Court was denied December 13, 1967.
 

 [1]
 

 At the trial the woman involved testified that the sexual intercourse was with her consent.
 

 [2]
 

 As to the defendant’s appearance the officer testified: “He had a partial erection. ... he had what appeared to be semen around the penis. ”
 

 [3]
 

 In
 
 Kraps,
 
 after a “feel search” had been made the officer asked the defendant about some cigarette papers in liis possession. Thereafter the officer patted the defendant’s coat again, felt a bulge in his jacket pocket and asked the defendant what was in the pocket. Upon receiving a reply that it was “a little container containing film” the officer removed the can from the defendant’s pocket and, after shaking it, concluded that it contained seeds or greens. He then opened the can and discovered that it contained vegetation resembling marijuana. (238 Cal.App.2d, at page 677.)
 

 [4]
 

 Compare the broad reasoning of the court in
 
 Charles
 
 v.
 
 United States
 
 (9th Cir. 1960) 278 F.2d 386, 388-389, cert. denied, 364 U.S. 831 [5 L.Ed.2d 59, 81 S.Ct. 46]: “On the other hand, it seems to us that a search of the person of the accused, even for the purpose of uncovering evidence of a crime other than that which is charged, is generally incident to a valid arrest. Power over the body of the accused is the essence of his arrest; the two cannot be separated. To sa,y that the police may curtail the liberty of the accused but refrain from impinging upon the sanctity of his pockets except for enumerated reasons is to ignore the custodial duties which devolve upon arresting authorities. Custody must of necessity be asserted initially over whatever the arrested party has in his possession at the time of apprehension. Once the body of the accused is validly subjected to the physical dominion of the law, inspections of his person, regardless of purpose, cannot be deemed unlawful, see
 
 People
 
 v.
 
 Chiagles
 
 (1928) 237 N.Y.193 [142 N.E. 583, 32 A.L.R. 676], unless they violate the dictates of reason either because of their number or their manner of pe.rpetration.2 ’ ’
 

 Footnote 2 is in part as follows: “Modern police practice calls for a thorough search at the stationliouse of any person who is taken into custody as well as the ‘frisking’ which takes place at the moment of arrest. . . . Such searches are not unreasonable; they are an integral part of efficient police procedure. See
 
 Baskerville
 
 v.
 
 United States
 
 (10th Cir. 1955) 227 F.2d 454. We cannot say that an accused may be thoroughly searched for a second time at the stationhouse, but not pending the arrival of the patrol wagon. No right to privacy would be enhanced by such a position. We would only be affording the accused the opportunity to dispose of incriminating evidence before he reaches the place of initial detention. ’ ’
 

 See also
 
 Cotton
 
 v.
 
 United States
 
 (9th Cir. 1967) 371 F.2d 385, 392-393.