[Crim. No. 13273. Second Dist., Div. Three. Apr. 10, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. GARY L. CECCONE, Defendant and Appellant.

Paul A. Jacobs, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Robert R. Granucci and William D. Stein, Deputy Attorneys General, for Plaintiff and Respondent.

MOSS, J.—Defendant was convicted of possession of marijuana in violation of Health and Safety Code section 11530. He was granted probation on condition that he pay a fine. The trial commenced on October 24, 1966, and, therefore, this case is controlled by the rules stated in *Miranda* v. *Arizona*, 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]. (*People* v. *Rollins*, 65 Cal.2d 681 [56 Cal.Rptr. 293, 423 P.2d 221].) Defendant's appeal raises the question whether a statement made by him to the arresting officer at the scene of the arrest stemmed from a "custodial interrogation" as that term is used in *Miranda*. We also consider whether the search of the car which produced the marijuana was illegal.

While driving a 1966 model car in the City of Beverly Hills at 9 p.m., defendant was stopped on Wilshire Boulevard near Santa Monica Boulevard by two officers of the Beverly Hills Police Department for failing to stop for a red light. Officer Zenter, who testified at the trial, asked defendant for his

operator's license and defendant replied that he did not have one. Officer Zenter asked for the vehicle registration and defendant answered that he had borrowed the car from a friend. Officer Zenter then asked defendant to find the registration slip. Defendant looked on the visor and the steering column, but was unable to find any evidence of registration. The officers asked defendant to alight from the car.

The exact chronology and details of the ensuing conversation and events were not developed in the evidence. After defendant got out of the car he and the officers moved around to the passenger side of the car where the officers talked to him. They asked him who owned the car. Defendant made several statements concerning the ownership of the car. He said that he had driven down from San Francisco in the car with two people named Gail and Hans, that he had borrowed the car from Hans and that Hans owned it. He also stated that the car had been rented by Hans' girl friend Gail. Officer Zenter asked defendant where Gail was and defendant replied in Venice, somewhere along the beach area. Defendant did not know the address of Hans or Gail or where they were at the time. Officer Zenter told defendant he suspected that the car was stolen. During the conversation, defendant entered the car from the passenger side to look for the registration slip in the glove compartment. While the door was open, Officer Zenter observed a capsule lying on the passenger side of the floorboard about four to five inches in front of the leading edge of the front seat. There was a considerable amount of debris on the floor of the car. He shined his flashlight in the car and saw another capsule and a wax paper bag. The capsules appeared to Officer Zenter to contain dexedrine, a dangerous drug. He had seen dexedrine capsules on two previous occasions. Officer Zenter entered the car and picked up the capsules and the wax paper bag. The bag contained a green leafy substance which Zenter believed resembled marijuana. He had seen marijuana 15 times before. Zenter asked defendant if everything in the car belonged to him. Defendant's reply to this question is not revealed by the testimony, but we may reasonably infer from the questions which Officer Zenter then asked that defendant's reply was negative. Zenter then showed defendant one of the capsules and asked him if he knew what it was. Defendant replied that he did not. The officer opened the bag and asked the defendant what it contained and defendant "stated it was marijuana." The officer then placed defendant under arrest on suspicion of

possession of a dangerous drug without a prescription, possession of marijuana, and grand theft auto and requested a stolen property report on the car. Two hours later they found that the car was registered to a car rental agency in San Francisco. The capsules were later found to contain dexedrine and the bag to contain marijuana.

At the time Officer Zenter entered the car he had probable cause to arrest defendant, and, therefore, the search which produced the marijuana was legal. The officers properly stopped defendant for a traffic violation. When it appeared that defendant did not have an operator's license and could not produce proof of registration for the car, it was reasonable for the officers to investigate further and for that purpose to ask defendant to alight and step around to the passenger side of the car. (See *People* v. *Blodgett*, 46 Cal.2d 114 [293 P.2d 57]; *People* v. *Galceran*, 178 Cal.App.2d 312 [2 Cal. Rptr. 901]; *People* v. *Wiley*, 162 Cal.App.2d 836 [328 P.2d 823].) The inability of defendant to produce either an operator's license or a vehicle registration, his conflicting statements as to the ownership of the car, and his inability to describe with more certainty the identity or whereabouts of his recent companions from whom he claimed to have borrowed the car were sufficient to give the officers probable cause to believe that the car had been stolen. (*People* v. *Odegard*, 203 Cal.App.2d 427 [21 Cal.Rptr. 515]; *People* v. *Myles*, 189 Cal.App.2d 42 [10 Cal.Rptr. 733]; *People* v. *Nebbitt*, 183 Cal. App.2d 452 [7 Cal.Rptr. 8]; *People* v. *Galceran, supra,* 178 Cal.App.2d 312.) However, the validity of the search need not rest upon the officer's belief that the car was stolen. While standing outside the car Officer Zenter observed inside the car a capsule which appeared to contain a dangerous drug. The drug was lying on the floorboard in the midst of debris, and, therefore, the officer was justified in suspecting that the defendant did not have a prescription for it. His suspicion was strengthened when he observed a wax paper bag which he believed to contain a green leafy substance which resembled marijuana. From what he observed the officer had reasonable cause to believe that defendant was guilty of illegal possession of narcotics. His subsequent entry into the car was therefore legal. (*People* v. *Mosco*, 214 Cal.App.2d 581 [29 Cal.Rptr. 644]; *People* v. *McClain*, 209 Cal.App.2d 224 [26 Cal.Rptr. 244]; *People* v. *Murphy*, 173 Cal.App.2d 367, 377-378 [343 P.2d 273].)

We reverse the judgment, however, because defendant's

statement to Officer Zenter that the paper bag contained marijuana should have been excluded from evidence under the rules of *Miranda* v. *Arizona, supra,* 384 U.S. 436, and the failure to exclude it was prejudicial error. ▮ Under *Miranda* "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." The court defines "custodial interrogation" to mean "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." (384 U.S. at p. 444 [16 L.Ed.2d at p. 706].)

*Miranda* declares that a person in custody must be warned of his rights "[p]rior to any questioning." (384 U.S. at p. 444 [16 L.Ed.2d at p. 706].) Under *Escobedo-Dorado* the right to a warning attaches only when the police undertake "a process of interrogations that lends itself to eliciting incriminating statements." (*Escobedo* v. *Illinois,* 378 U.S. 478, 491 [12 L.Ed.2d 977, 986, 84 S.Ct. 1758]; *People* v. *Dorado,* 62 Cal.2d 338, 347 [42 Cal.Rptr. 169, 398 P.2d 361]; *People* v. *Stewart,* 62 Cal.2d 571, 577 [43 Cal.Rptr. 201, 400 P.2d 97], affd. sub nom. *Miranda* v. *Arizona, supra.*) *Miranda* thus allows less latitude for investigatory questioning than was permitted under the *Escobedo-Dorado* standard. (See *People* v. *McFall,* 259 Cal.App.2d 172 [66 Cal.Rptr. 277]; compare *People* v. *Butterfield,* 258 Cal.App.2d 586 [65 Cal. Rptr. 765]; *People* v. *Singleton,* 255 Cal.App.2d 547, 549 [63 Cal.Rptr. 324].) ▮ On-the-scene questioning of a suspect in custody without prior warning of his rights has been sanctioned under *Escobedo-Dorado* where the purpose of the questioning was found to be investigatory and not to elicit incriminating statements. (*People* v. *Alesi,* 67 Cal.2d 856 [64 Cal.Rptr. 104, 434 P.2d 360]; *People* v. *Jones,* 255 Cal. App.2d 163, 168 [62 Cal.Rptr. 848]; *People* v. *Brooks,* 234 Cal.App.2d 662, 670-671 [44 Cal.Rptr. 661]; *People* v. *Mora,* 232 Cal.App.2d 400, 406 [42 Cal.Rptr. 725].) On the other hand, where no investigatory purpose is proved by the prosecution, statements taken from a suspect in custody at the scene of arrest are presumed under *Escobedo-Dorado* to have been elicited by a process of interrogation that lent itself to eliciting incriminatory statements. (*People* v. *Garavito,* 65 Cal.2d 761 [56 Cal.Rptr. 289, 423 P.2d 217]; *People* v. *Chavira,* 253 Cal.App.2d 928 [61 Cal.Rptr. 407]; *People* v. *Diaz,* 238 Cal.App.2d 636 [48 Cal.Rptr. 20].)

In *People* v. *Alesi, supra,* 67 Cal.2d 856, the defendant was arrested pursuant to warrant in the apartment of Miss Kline for the crime of selling heroin. In conducting a quick search of the defendant the police found a marijuana cigarette in his shirt pocket. Without advising him of his rights, the arresting officer asked the defendant if the cigarette was his and he said, "Yes." In response to a further question, the defendant admitted that the cigarette was marijuana. The Supreme Court held the questioning was not violative of *Escobedo-Dorado.* The court explained, "The admission of marijuana possession, though elicited, did not result from an extended police interrogation. It concerned a crime (marijuana possession) that was unrelated to the charges (heroin sales) for which the arrest warrant had been issued. . . . [T]he subsequent question by the officer offered defendant an opportunity to explain away a crime that appeared to be committed in his presence. The queries were a natural product of the fast moving events and gave the deputies an opportunity to exonerate an innocent person, Miss Kline, who was also in the apartment at the time and could have been involved in ownership of the contraband. The questions concluded the inquiry into the newly discovered crime, marijuana possession, and we hold that under the circumstances this was a routine investigation and not violative of *Escobedo-Dorado.*" (67 Cal.2d 856, 864-865.)

*People* v. *Alesi* is distinguishable from this case on its facts because the questioning here cannot be explained on the ground that the arresting officer was giving defendant the opportunity to exonerate another suspect who was also present; defendant was alone in the car. ■ More importantly, however, *Alesi* is not controlling because *Miranda* permits no questioning without a prior warning once the suspect is in custody, that is, if, as a reasonable person he is led to believe that he is physically deprived of his freedom of action in any significant way. (*People* v. *Arnold,* 66 Cal.2d 438, 443 [58 Cal.Rptr. 115, 426 P.2d 515].)

*Miranda* does not specify at what point a permissible general on-the-scene questioning of citizens in the fact-finding process (see 384 U.S. at pp. 477-478 [16 L.Ed.2d at pp. 725-726]) becomes a custodial interrogation. The court implies, however, that an interrogation becomes "custodial" when the investigation becomes focused upon the person being interrogated. (384 U.S. at p. 444, footnote 4 [16 L.Ed.2d at p. 706].)

■ Once the investigating officer has probable cause to

believe that the person being detained for questioning has committed an offense, the officer cannot be expected to permit the suspect to leave. At that point, at the latest, the interrogation becomes custodial and prior to any further questioning the suspect must be warned of his rights. (See Graham, *What Is "Custodial Interrogation"?: California's Anticipatory Application of Miranda* v. *Arizona* (1966) 14 U.C.L.A. L.Rev. 59, 89, 116-117.) ■ As we have shown, Officer Zenter had probable cause to suspect defendant of driving a stolen vehicle and possessing dangerous drugs and marijuana at the time he asked defendant to identify the contents of the paper bag. The prior questioning could have led defendant, as a reasonable person, to believe that he was not free to depart. Therefore, he was in custody and should have been warned of his rights before being asked any further questions.

■ The record does not support the inference that at the time Officer Zenter asked defendant what was in the bag that he was merely fact-finding. The burden of showing whether defendant was in custody and whether or not he was a suspect was on the prosecution. (*People* v. *Davis,* 66 Cal.2d 175, 180-181 [57 Cal.Rptr. 130, 424 P.2d 682].) Officer Zenter testified that the contents of the bag resembled marijuana and that he had seen marijuana 15 times before. He also testified that he concluded, despite defendant's denial, that defendant knew that the capsules contained a dangerous drug. Sometime before showing defendant the capsule, the officer asked him if he owned everything in the car. It appears from this state of the record that Officer Zenter was not seeking merely to confirm his suspicion, but was seeking as well to establish defendant's knowledge of the contraband.

Neither can it be argued that Officer Zenter was merely trying to give defendant an opportunity to exonerate himself and should have been permitted to question defendant further without first warning him of his rights. A similar contention was answered in *Miranda* as follows, "It is also urged that an unfettered right to detention for interrogation should be allowed because it will often redound to the benefit of the person questioned. When police inquiry determines that there is no reason to believe that the person has committed any crime, it is said, he will be released without need for further formal procedures. The person who has committed no offense, however, will be better able to clear himself after warnings with counsel present than without. It can be assumed that in such circumstances a lawyer would advise his client to talk

freely to police in order to clear himself." (384 U.S. at p. 482 [16 L.Ed.2d at p. 728].)

In any case, the prosecution has not sustained its burden of proving that the question was asked for this purpose. It appears that Officer Zenter was already convinced that defendant knew that the capsules contained dangerous drugs. Defendant's denial of knowledge of the contents of the capsules did not change the officer's mind because he charged defendant with possession of dangerous drugs on the basis of the officer's belief that the capsules contained dexedrine. There is nothing in the record to indicate that Officer Zenter would have dropped the marijuana charge if defendant had replied that he did not know what the green leafy substance was. Therefore, it appears more likely that Officer Zenter did not ask defendant about the contents of the bag to enable him to exonerate himself but rather for the purpose of obtaining an admission that defendant knew it contained marijuana.

Under the circumstances it cannot be said that the prosecution sustained its burden of showing that defendant's statement was other than a response to a question asked during a custodial interrogation. Therefore, his statement was erroneously admitted into evidence in violation of the rules announced in *Miranda*. ■■ Applying the test prescribed in *Chapman* v. *California*, 386 U.S. 18, 23 [17 L.Ed.2d 705, 710, 87 S.Ct. 824], for the determination of the prejudicial effect of federal constitutional error, we are compelled to conclude that there is at least a reasonable "possibility" that defendant's admission that he knew the bag contained marijuana "might have contributed to the conviction" (*Fahy* v. *Connecticut* (1963) 375 U.S. 85, 86-87 [11 L.Ed.2d 171, 172-173, 84 S.Ct. 229]) and that the People have not proved the error to be "harmless beyond a reasonable doubt." (*Chapman* v. *California, supra,* 386 U.S. 18, 24 [17 L.Ed.2d 705, 710].) To establish their case the People were required to prove that defendant exercised dominion and control over the marijuana with knowledge of its presence and narcotic character. (*People* v. *Redrick,* 55 Cal.2d 282, 285 [10 Cal.Rptr. 823, 359 P.2d 255].) The bag was found by Officer Zenter on the floor of the car in the midst of a considerable amount of debris. Defendant testified that he had driven to Los Angeles from San Francisco with some friends on the day of his arrest, that the car had been rented by one of his companions from a rental agency in San Francisco, and that he had borrowed the car from his friends earlier that evening. He denied knowledge of

any of the contents of the car except some groceries. His testimony was confirmed in part by the evidence that the police had found that the car did indeed belong to a rental agency in San Francisco. His testimony was confirmed in other respects by that of a friend who accompanied defendant on the trip from San Francisco. The finding of knowing possession was necessarily predicated on defendant's possession of the car and his admission that he knew the contents of the bag to be marijuana. In view of the uncontradicted testimony that defendant did not own the car, without defendant's admission the People's case became a close one. The error was prejudicial.

The judgment is reversed.

Ford, P. J., and Cobey, J., concurred.