Filed 4/11/14  P. v Moody CA5

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>THOMAS JAMES MOODY,<br><br>Defendant and Respondent. | F066596<br><br>(Super. Ct. No. 1439135)<br><br>**O P I N I O N** |

### THE COURT\*

APPEAL from a judgment of the Superior Court of Stanislaus County.  Scott T. Steffen, Judge.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen and Caely E. Fallini, Deputy Attorneys General, for Plaintiff and Appellant.

Carol Foster, under appointment by the Court of Appeal, for Defendant and Respondent.

-ooOoo-

---

\*       Before Levy, Acting P.J., Gomes, J., and Poochigian, J.

After a magistrate sustained a *Miranda*[1] objection and dismissed the complaint against defendant Thomas James Moody, the People moved to reinstate the complaint pursuant to Penal Code section 871.5.[2]  The Stanislaus County Superior Court denied the motion and the People appeal.  We will reverse the superior court's order denying reinstatement of the complaint.

## BACKGROUND

On December 6, 2011, the Stanislaus County District Attorney charged defendant with possession of cocaine (Health & Saf. Code, § 11350, subd. (a)) and possession of a controlled substance pipe (Health & Saf. Code, § 11364, subd. (a)).  The complaint included various special allegations.  Defendant pled not guilty.

At the preliminary hearing on May 29, 2012, Officer Torres was the only witness. He testified that he and Officer Jones were on patrol on December 2, 2011, at about 1:00 a.m.  They were driving in an alley when they saw a BMW with an open driver's door and an illuminated dome light.  Defendant was crouched down and his hands were under the dashboard.[3]  The officers found this behavior suspicious because it was consistent with someone breaking into the vehicle, tampering with it, or stealing it. Based on these suspicions, the officers conducted an investigative stop.  Officer Jones pulled the patrol vehicle toward the BMW's driver's side, perpendicular to the BMW, and shone the spotlight on defendant.  Defendant immediately "popped out" of the BMW.  Both officers exited the patrol vehicle and approached.  Officer Jones contacted defendant, who was now about six or seven feet from the BMW's open driver's door, and started talking to him and questioning him.  As Officer Jones questioned defendant,

---

[1]     *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*).

[2]     All statutory references are to the Penal Code unless otherwise noted.

[3]     It was later determined defendant was under the dashboard with a screwdriver.

2

Officer Torres stood near the BMW's rear door on the driver's side, about four feet from the open driver's door.

Officer Torres asked defendant for permission to search the car. Defendant said, "Yes." Officer Torres saw a dirty rag tucked into the pocket of the open driver's door. He pulled out the rag, unwrapped it, and found a glass pipe and a white rock-like substance. Officer Torres recognized that the glass pipe was consistent with those used to smoke rock cocaine.

Officer Jones spoke to defendant; they had a conversation about the rock-like substance. Defendant said it was crack. The officers had not read defendant his *Miranda* rights.

Following this testimony, the magistrate requested briefing and reserved its ruling on defendant's *Miranda* motion.

On July 9, 2012, the magistrate granted the *Miranda* motion. The magistrate concluded that the search was consensual and it occurred before defendant was in custody. Once Officer Torres found the glass pipe and rock-like substance, however, he became aware that an offense had been committed, and at that point, defendant was no longer free to leave and the interrogation became custodial. Thus, the officers should have read defendant his rights prior to any further questioning. When the officer asked defendant about the rock-like substance, he should have known that his words were likely to elicit an incriminating response from defendant. The magistrate stated it was granting the motion "from the time of the discovery of the rag forward. Because of that, there's no evidence linking the defendant to the substance found or the pipe found, so the defendant is not held to answer on either. Defendant is discharged."

On July 24, 2012, the People moved to compel reinstatement of the complaint pursuant to section 871.5, arguing that the magistrate erroneously dismissed the complaint.

3

On January 4, 2013, the superior court denied the People's motion. The court accepted the magistrate's finding that defendant was not free to leave once the officer had found the pipe. Based on this finding, the court believed the "legal issue [was] pretty clear that [defendant] was required to be advised of his *Miranda* rights." The court considered *People v. Sims* (1980) 109 Cal.App.3d 900, where officers found some marijuana in a car and asked the defendant where the rest of the marijuana was. The defendant pointed out the location of more marijuana. The *Sims* court said the defendant had become a suspect in the investigation that had focused on him and he was not free to leave the scene. Thus, he was in custody and the officers should have advised him of his rights before questioning him further.

## DISCUSSION

The People contend the magistrate's decision was erroneous as a matter of law because the circumstances under which defendant made the statement that the rock-like substance was crack did not constitute custodial interrogation and therefore did not trigger the duty to advise him of his *Miranda* rights. Accordingly, the People argue the superior court erred in denying their motion to reinstate the complaint.

### I.     Law

Section 871.5 provides that "[w]hen an action is dismissed by a magistrate …, the prosecutor may make a motion in the superior court within 15 days to compel the magistrate to reinstate the complaint or a portion thereof and to reinstate the custodial status of the defendant under the same terms and conditions as when the defendant last appeared before the magistrate." (§ 871.5, subd. (a).) "The only ground for the motion shall be that, as a matter of law, the magistrate erroneously dismissed the action or a portion thereof." (§ 871.5, subd. (b).) "The superior court shall hear and determine the motion on the basis of the record of the proceedings before the magistrate. If the motion

4

is litigated to decision by the prosecutor, the prosecution is prohibited from refiling the dismissed action, or portion thereof." (§ 871.5, subd. (c).)

"'In a proceeding under Penal Code section 871.5 to reinstate a complaint, the superior court sits as a reviewing court and is bound by the magistrate's findings of fact if they are supported by substantial evidence. [Citation.]' [Citation.] … 'In determining whether to compel reinstatement of a complaint dismissed after the granting of a defendant's suppression motion by the magistrate at a preliminary hearing, the superior court reviews the legal soundness of the magistrate's ruling on the suppression motion [citations] based on "the record of the proceedings before the magistrate" [Citation.]' [Citation.] [¶] 'On appeal from an order denying a motion to reinstate a criminal complaint under section 871.5, we disregard the superior court's ruling and directly examine the magistrate's ruling to determine if the dismissal of the complaint was erroneous as a matter of law. To the extent the magistrate's decision rests upon factual findings, "[w]e, like the superior court, must draw every legitimate inference in favor of the magistrate's ruling and cannot substitute our judgment, on the credibility or weight of the evidence, for that of the magistrate." [Citation.]' [Citation.] 'We review the magistrate's legal conclusions de novo, but are bound by any factual findings the magistrate made if they are supported by substantial evidence.' [Citation.] [¶] '[I]t is the duty of the superior court, and ours as well, to measure those facts, as found by the magistrate, against the constitutional standard of reasonableness. The constitutional issue is solely a question of law ….' [Citation.]" (*People v. Nottoli* (2011) 199 Cal.App.4th 531, 544-545.)

In *Miranda, supra,* 384 U.S. 436, the United States Supreme Court held that prior to any *custodial interrogation*, police officers must advise a criminal suspect of his right to remain silent, right to have an attorney present, and right to have an appointed attorney if the suspect is indigent. (*Id.* at p. 444.) A defendant's statements obtained in

5

noncompliance with this rule cannot be introduced into evidence to establish his guilt. (*Ibid.*) Importantly, officers "are not required to administer *Miranda* warnings to everyone whom they question." (*Oregon v. Mathiason* (1977) 429 U.S. 492, 495.) "'Absent "custodial interrogation," *Miranda* simply does not come into play.'" (*People v. Ochoa* (1998) 19 Cal.4th 353, 401.)

The "ultimate inquiry" for custody for *Miranda* is "simply whether there is a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest. [Citation.]" (*California v. Beheler* (1983) 463 U.S. 1121, 1125.) Absent a formal arrest, custody is determined by objectively looking at all the surrounding circumstances and determining whether a reasonable person in the suspect's position would believe he was in police custody to the degree associated with a formal arrest. (*Yarborough v. Alvarado* (2004) 541 U.S. 652, 662-663; *Berkemer v. McCarty* (1984) 468 U.S. 420, 442 (*Berkemer*); *People v. Stansbury* (1995) 9 Cal.4th 824, 830; *People v. Pilster* (2006) 138 Cal.App.4th 1395, 1403 ["Would a reasonable person interpret the restraints used by the police as tantamount to a formal arrest?"].) A single factor, such as handcuffing, is not determinative. (*People v. Davidson* (2013) 221 Cal.App.4th 966, 972-973.)

An officer's undisclosed focus of suspicion is not relevant to the custody determination. (*Stansbury v. California* (1994) 511 U.S. 318, 326.) "[A] police officer's subjective view that the individual under questioning is a suspect, if undisclosed, does not bear upon the question whether the individual is in custody for purposes of *Miranda*. [Citation.] … Save as they are communicated or otherwise manifested to the person being questioned, an officer's evolving but unarticulated suspicions do not affect the objective circumstances of an interrogation or interview, and thus cannot affect the *Miranda* custody inquiry…. [¶] An officer's knowledge or beliefs may bear upon the custody issue if they are conveyed, by word or deed, to the individual being questioned.

6

[Citation.] Those beliefs are relevant only to the extent they would affect how a reasonable person in the position of the individual being questioned would gauge the breadth of his or her "'"freedom of action."'" [Citation.] Even a clear statement from an officer that the person under interrogation is a prime suspect is not, in itself, dispositive of the custody issue …." (*Id.* at pp. 324-325.)

Determining whether a defendant was in custody within the meaning of *Miranda* is a mixed question of law and fact. (*People v. Ochoa, supra,* 19 Cal.4th at p. 401.) "We apply a deferential substantial evidence standard to the trial court's factual findings, but independently determine whether the interrogation was custodial." (*People v. Pilster, supra,* 138 Cal.App.4th at p. 1403.)

**B.    Analysis**

We agree with the magistrate's conclusion that defendant was not in custody before and during the consensual search of the BMW. But we disagree that when Officer Torres unwrapped the rag and found the glass pipe and rock-like substance, defendant's status became custodial.

The magistrate based its conclusion on *People v. Ceccone* (1968) 260 Cal.App.2d 886 (*Ceccone*), where the court stated: "*Miranda* permits no questioning without a prior warning once the suspect is in custody, that is, if, as a reasonable person he is led to believe that he is physically deprived of his freedom of action in any significant way. [Citation.] [¶] *Miranda* does not specify at what point a permissible general on-the-scene questioning of citizens in the fact-finding process [citation] becomes a custodial interrogation. The court implies, however, that an interrogation becomes 'custodial' when the investigation becomes focused upon the person being interrogated. [Citation.] Once the investigating officer has probable cause to believe that the person being detained for questioning has committed an offense, the officer cannot be expected to permit the suspect to leave. At that point, at the latest, the interrogation becomes

7

custodial and prior to any further questioning the suspect must be warned of his rights. [Citation.]  As we have shown, [the officer] had probable cause to suspect defendant of driving a stolen vehicle and possessing dangerous drugs and marijuana at the time he asked defendant to identify the contents of the paper bag.  The prior questioning could have led defendant, as a reasonable person, to believe that he was not free to depart. Therefore, he was in custody and should have been warned of his rights before being asked any further questions."  (*Id.* at pp. 892-893.)

In our opinion, *Ceccone* does not reflect the current state of the law.  *Ceccone* is one of several cases that "accept[ed] as a ground for determining the existence of custody either that the arresting officer had probable cause to arrest or more generally that the police investigation had focused on the suspect.  (E.g., *People v. Bolinski* (1968) 260 Cal.App.2d 705, 717-718; *Ceccone, supra,* 260 Cal.App.2d 886, 892-893; [*People v.*] *Manis* [(1969)] 268 Cal.App.2d 653, 666-670; [*People v.*] *Herdan* [(1974)] 42 Cal.App.3d 300, 307; *In re James M.* [(1977)] 72 Cal.App.3d 133, 137-138; *People v. Carter* (1980) 108 Cal.App.3d 127, 131.)  To the extent that these cases have taken the officer's information or state of mind as the ground for determining the existence of custody, we find them at odds with the more recent holdings of the United States Supreme Court.  (*Berkemer …, supra,* [468] U.S. [420], fn. 22 (probable cause to arrest does not determine custody); *Beckwith v. United States* (1976) 425 U.S. 341, 346-347 (focus of the investigation does not determine custody).)"  (*People v. Lopez* (1985) 163 Cal.App.3d 602, 606.)**[4]**

**4**     See also *People v. Vasquez* (1993) 14 Cal.App.4th 1158:  "Defendant relies on *People v. Sims*[, *supra,*] 109 Cal.App.3d 900, *People v. Herdan*[, *supra,*] 42 Cal.App.3d 300, *People v. Layton* (1972) 29 Cal.App.3d 349, and *People v. Abbott* (1970) 3 Cal.App.3d 966 to support his claim that *Miranda* warnings were required.  These cases are factually similar to this one.  We note, however, that in each, the court concluded that warnings were required because, among other things, the defendant had been the focus of official investigation.  As noted above, this fact is irrelevant unless communicated to the

8

In *Berkemer, supra,* 468 U.S. 420, the officer observed the defendant's car weaving on the highway. He stopped the defendant, determined he was drunk, and decided he "'would be charged with a traffic offense and, therefore, his freedom to leave the scene was terminated.'" *(Id.* at p. 423.) But the officer did not tell the defendant he would be taken into custody. The officer then had the defendant perform a field sobriety test, which he failed. The officer asked the defendant whether he had been using intoxicants, and he answered that he had recently consumed two beers and smoked marijuana. The officer then placed the defendant under arrest and took him to jail. *(Ibid.)* The United States Supreme Court stated: "[W]e find nothing in the record that indicates that [the defendant] should have been given *Miranda* warnings at any point prior to the time [the officer] placed him under arrest. [W]e reject the contention that the initial stop of [the defendant's] car, by itself, rendered him 'in custody.' And [the defendant] has failed to demonstrate that, at any time between the initial stop and the arrest, he was subjected to restraints comparable to those associated with a formal arrest. Only a short period of time elapsed between the stop and the arrest. At no point during that interval was [the defendant] informed that his detention would not be temporary. Although [the officer] apparently decided as soon as [the defendant] stepped out of his car that [he] would be taken into custody and charged with a traffic offense, [the officer] never communicated his intention to [the defendant]. A policeman's unarticulated plan has no bearing on the question whether a suspect was 'in custody' at a particular time; the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation. Nor do other aspects of the interaction of [the officer] and [the

___

defendant. It does not appear that such communication occurred in any of these cases. If it did, then, of course, this case is distinguishable on that ground. If it did not, then we would decline to follow these cases because their analysis of custody now appears to be incorrect."

defendant] support the contention that [the defendant] was exposed to 'custodial interrogation' at the scene of the stop. From aught that appears in the stipulation of facts, a single police officer asked [the defendant] a modest number of questions and requested him to perform a simple balancing test at a location visible to passing motorists. Treatment of this sort cannot fairly be characterized as the functional equivalent of formal arrest. [¶] We conclude, in short, that [the defendant] was not taken into custody for the purposes of *Miranda* until [the officer] arrested him. Consequently, the statements [the defendant] made prior to that point were admissible against him." (*Id.* at pp. 441-442, fns. omitted.)

In the present case, we conclude that the discovery of the apparent contraband did not create the functional equivalent of a formal arrest. The circumstances of the interaction leading to the discovery had not been aggressive or coercive. The officers illuminated defendant with a spotlight, but they did not physically restrain him. Although they temporarily detained him for investigatory questioning to confirm or dispel their suspicions that he was attempting to steal or tamper with the BMW, this did not constitute custody for purposes of *Miranda.* (*Berkemer, supra,* 468 U.S. at pp. 438-440; *Miranda, supra,* 384 U.S. at pp. 477-478; *People v. Farnam* (2002) 28 Cal.4th 107, 180, citing *People v. Clair* (1992) 2 Cal.4th 629, 679 [custody not found where an officer, with his gun drawn, approached the defendant at an apartment crime scene to ask who he was, whether he had identification and lived in the apartment, what he was doing in the apartment, and whether he knew the residents]; *People v. Forster* (1994) 29 Cal.App.4th 1746, 1754.) The search of the BMW was consensual and brief, consisting only of Officer Torres's reaching into the open door's pocket. Obviously, the officers' suspicions were aroused when the apparent contraband was discovered, but *Miranda* warnings are not required simply because a person has become a suspect in an officer's mind. (*Oregon v. Mathiason, supra,* 429 U.S. at p. 495; *People v. Linton* (2013) 56

10

Cal.4th 1146, 1167 [defendant appeared nervous, misrepresented prior interaction with victim, had suspicious injuries on his arm, and connected himself to the prior nighttime incident with victim by offering his recollection of himself sleepwalking; obviously, the officer's suspicions were aroused, but *Miranda* warnings are not required simply because a person has become a suspect in the officer's mind]; *People v. Epperson* (1986) 187 Cal.App.3d 115, 118-119 [defendant unexpectedly pulled an unmarked vial from his pocket, looked at it, and quickly placed it in his other pocket; the fact that "the officer may have suspected the vial to contain contraband did not make the encounter 'custodial' in nature"].) Assuming Officer Torres believed defendant had committed a crime and intended to arrest him, like the officer in *Berkemer*, this subjective belief, if not disclosed, was not relevant to a reasonable person's perception of the situation. We see no objective indicia that would have led a reasonable person to believe the officers were imposing restraints tantamount to a formal arrest once they discovered what appeared to be contraband. In sum, defendant's status did not become custodial simply because the officers discovered the apparent contraband, and thus Officer Jones's subsequent conversation with defendant about it did not amount to custodial interrogation. Accordingly, the officers were not required to advise defendant of his *Miranda* rights, and defendant's statement that the rock-like substance was crack should not have been found inadmissible.

We conclude the magistrate mistakenly decided *Miranda* advisements were required. As a result, the magistrate's dismissal of the complaint against defendant was erroneous as a matter of law, and the superior court erred in refusing to reinstate the felony complaint.

## **DISPOSITION**

The order denying the People's motion to reinstate the felony complaint in Case No. 1439135 is reversed.

11