[Crim. No. 6164.   First Dist., Div. Two.   Feb. 20, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. JAMES ARTHUR McFALL, Defendant and Appellant.

Morris Schachter, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Jerome C. Utz, Michael J. Kelly and Edward P. O'Brien, Deputy Attorneys General, for Plaintiff and Respondent.

AGEE, J.—Defendant appeals following jury conviction of auto theft (Veh. Code, § 10851). The prosecution's case in chief is based upon the testimony of three witnesses.

Michael Burns testified that on July 30, 1965, about 7 p.m., he drove his 1954 Chevrolet out to a sawmill near Fortuna, where his brother Gene was at work; that he parked it in the mill's parking lot and put the car keys on the sun visor; that he had traded the Chevrolet for Gene's Nova and he went into the mill and got the Nova's keys from Gene; that he drove away in the Nova and never saw the Chevrolet again; that he had not given anyone except Gene permission to drive the Chevrolet.

Richard Mendoza testified that on the same evening, about 9 o'clock, defendant drove the Chevrolet into a drive-in, which the witness owned, and told him that he (defendant) had bought the car.

Chief of Police Lindsay, of the City of Louisiana, State of Missouri, testified that on October 9, 1965 he arrested defendant in said city pursuant to a warrant of arrest on charges of fraudulent checks and forgery. Defendant was driving the Chevrolet at the time. (The statements made by defendant to Chief Lindsay following the arrest will be discussed below.)

The prosecution rested at this point and defendant took the witness stand. He testified that Gene had agreed to sell him the Chevrolet for $50 and that it would be at the sawmill on Friday (July 30); that he went to the mill on that day, about 8:30 p.m., paid Gene $30 in cash on account, got the car keys from him, and drove away in the Chevrolet; that Gene told him the "papers to the car" had not come back from Sacramento and that he would send them to him when they came; that he believed Gene was the owner of the Chevrolet and entitled to sell it.

Defendant rested after completing his testimony and the prosecution called Gene in rebuttal. He testified that he had never offered to sell the Chevrolet to defendant; that when he finished his shift and found the Chevrolet missing from the car lot, he got a ride into Fortuna and reported this fact to the State Highway Patrol.

On cross-examination, Gene testified that he had known defendant for about five years; that he and his brother Michael had made a deal which involved the exchange of their cars; that he (Gene) may have told defendant about this deal; that he did not tell defendant's sister (Ruby Sharp) that his reason for filing the stolen vehicle report was that defendant took the car out of the state.

The defense called Ruby Sharp, defendant's stepsister, in surrebuttal. She testified to a conversation with Gene in which he admitted selling the car to defendant but that he reported it as missing because defendant had taken the car out of the state without paying for it.

### Statements Made to Police By Defendant

Chief Lindsay testified that he stopped defendant, who was driving the Chevrolet, and placed him under arrest pursuant to the warrant referred to above.

Lindsay gave the following answers to the following questions by the prosecutor: ''Q. . . . Now, after you arrested him did you advise him of any legal rights? A. Yes, sir. Q. And what did you advise him? A. I advised him that he didn't have to make a statement, he was entitled to an attorney if he wanted one, and the boy voluntarily gave us a statement.''

Timely objection was made by defendant's counsel to the admission of any statement by defendant on the ground that the warnings required by *Miranda* v. *Arizona* (June 13, 1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R. 3d 974] had not been given. This decision is applicable since the trial herein did not commence until October 17, 1966. (See *People* v. *Rollins* (1967) 65 Cal.2d 681, 691 [56 Cal.Rptr. 293, 423 P.2d 221].)

*Miranda* holds that, absent an explicit waiver, statements of one subjected to custodial police interrogation are admissible as evidence only if the person in custody is warned, prior to questioning, that: (1) he has a right to remain silent, (2) anything he says may be used as evidence against him, (3) he has the right to the presence of a lawyer during the interrogation, and (4) if indigent, he has a right to a court-appointed lawyer (384 U.S., at p. 444 [16 L.Ed.2d at p. 706]).

It is clear from the record that the warnings given did not include those numbered (2) and (4) above and there is no evidence which indicates any waiver of these rights. Nevertheless, the trial court overruled the defendant's objections based upon *Miranda* and admitted the following testimony of Chief Lindsay:

"We asked him for ownership to the car or a slip of the title. The boy told us that the car belonged to his mother who lived in the State of Washington. Upon questioning further we asked him how come the car had California plates on it if his mother lived in Washington. He then said that he had bought the car from his buddy in Eureka, California, who worked at a service station, the day prior to him leaving California, and he didn't have time to get the papers and that they would be mailed to him."

The People contend that the *Miranda* warnings were not required because, at the time of questioning, suspicion had not focused on the defendant with respect to auto theft and he was not in custody on any charge relating to the vehicle.[1]

Granting that the charges upon which defendant was arrested are totally unrelated to the subsequent charge of auto theft and that the questioning as to the car ownership was only investigatory, the rationale and explicit language of the *Miranda* decision rule out any such limitation on present admissibility requirements. We therefore need not discuss the *Escobedo-Dorado* rule as it was applied prior to Miranda. (*Escobedo* v. *Illinois* (1964) 378 U.S. 478 [12 L.Ed.2d 977, 84 S.Ct. 1758] ; *People* v. *Dorado* (1965) 62 Cal.2d 338 [42 Cal. Rptr. 169, 398 P.2d 361].)

*Miranda* states: "[T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. . . . Unless adequate protective devices are employed to dispel the compulsion inherent in custodial surroundings, *no*

---

[1]The People cite *People* v. *Sanchez* (1967) 65 Cal.2d 814 [56 Cal.Rptr. 648, 423 P.2d 800], in support of this contention. However, the trial therein was had before June 13, 1966 and the court said, "[W]e properly apply *Escobedo* and *Dorado* to the problem at hand, and refrain from applying *Miranda*." (P. 822.) Moreover, the court expressly refused to resolve such contention. (P. 823.)

*statement* obtained from the defendant can truly be the product of his free choice. . . . [W]hen an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is jeopardized . . . . [U]nless and until such warnings and waiver are demonstrated by the prosecution at trial, *no evidence* obtained as a result of interrogation can be used against him." (Italics added; 384 U.S. at pp. 444, 458, 478-479 [16 L.Ed.2d at pp. 706, 714, 725-726].)

Thus, considering the evil against which *Miranda* is directed, it is the *fact* of custodial interrogation rather than its cause or the accusatory nature of the questions asked which necessitates the application of Miranda.

We therefore hold that defendant's statement to the police was inadmissible. We must therefore consider whether such error requires a reversal of the conviction. Under *Chapman* v. *California,* 386 U.S. 18, 24 [17 L.Ed.2d 705, 710, 87 S.Ct. 824], it is stated that "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt."

The admission of defendant's statement to Chief Lindsay was prejudicial because it directly contradicted defendant's trial testimony that he had purchased the car from Gene Burns. There is no dispute that Gene had the authority to make such a sale. The issue, as a practical matter, boils down to the credibility of Gene as against that of the defendant.

There is nothing in defendant's trial testimony that is inherently improbable. He had known Gene for some five years and knew of the "deal" between the brothers to trade cars. Gene intended to sell the Chevrolet and buy a pickup or a jeep. The car was rundown mechanically, the front bumper and splash pan were gone, the window on the driver's side was broken out, and the transmission was in need of repair.

There is no evidence in the record as to the value of the Chevrolet but the prosecution made no attempt to show that Gene would not be likely to have agreed to sell it for $50 or that this amount was not a reasonable price.

The prosecutor gave great weight in his summation to the jury to the statement made by defendant to the police. He closed his final argument as follows: "Remember, two stories, first, 'My mother owned it,' and then, 'I bought it from a guy at a service station,'—not a sawmill. 'I didn't buy it from a friend at a sawmill, I bought it from a friend of mine at a

service station in California, in Eureka,' so with this, ladies and gentlemen, we conclude our case, and we suggest that a guilty finding is a proper one in this case.''

From our examination of the record as a whole, we cannot declare a belief that the admission of defendant's statements to the police was harmless beyond a reasonable doubt. (*Chapman* v. *California, supra,* 386 U.S. 18, 24 [17 L.Ed.2d 705, 710].)

It is therefore unnecessary to discuss defendant's other contentions on appeal.

Judgment reversed.

Shoemaker, P. J., and Taylor, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied April 17, 1968.