[Crim. No. 14514.   Second Dist., Div. Four.   Dec. 27, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. VIRGINIA WILSON, Defendant and Appellant.

Thomas J. Sammon and Boyd E. Hornor for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Larry Ball, Deputy Attorney General, for Plaintiff and Respondent.

JEFFERSON, J.—Defendant was found guilty in a jury trial of possession of marijuana (Health & Saf. Code, § 11530). The court granted her probation conditional upon the service of a three-month county jail sentence. She appeals from the order granting probation (deemed a final judgment under Penal Code, section 1237, subdvision 1.).

At about 1 a.m. on June 9, 1967, officers from the Santa Barbara sheriff's department together with members of the State Bureau of Narcotics Enforcement, entered and searched a two-story residence located at 6565½ Del Playa in Santa Barbara. They had a warrant authorizing a search of the

premises and of its occupants (including defendant and certain other named individuals), for marijuana.

When they entered Officers Feldman and Honey proceeded upstairs. On the way they passed two females. At the end of the hallway they found a bedroom. Defendant and a bearded male companion were in the bedroom reading. The two officers identified themselves and showed them a copy of the warrant. They did not tell them that they must remain in the room nor did they say they were free to leave.

The officers began a routine search of the room beginning at one end and working around to the other. During the search defendant continued to read a book. While looking through a dresser, Officer Honey found a package of "zig-zag" cigarette papers (which are often used to roll marijuana cigarettes). He asked defendant if they belonged to her. She answered affirmatively, saying that she used them to make her own cigarettes. The officer did not find any roll-your-own type cigarette tobacco.

As Officer Honey continued to work his way around the room, he came upon a shopping bag in a corner. He observed three metal boxes inside the bag and asked defendant about the contents. She stated that the boxes contained her photograph slides. The officer pulled the boxes out and examined the contents. After confirming that they contained slides as defendant had stated, he looked into the sack once again to make sure that he had removed everything. He observed that there was a folded plastic container in the bottom of the sack. He asked defendant "What's this on the bottom of the bag?" Defendant, who was sitting about 3 feet away, said "Let me see it." She leaned forward and the officer turned the bag so that she could see into it. After looking inside she answered, "Grass, I guess." (The word "grass" is a commonly used expression meaning marijuana.) After defendant made this statement, Honey reached in and removed the plastic container. After unfolding and examining it he concluded that it did indeed contain marijuana. At this point defendant was placed under arrest and advised of her constitutional rights.

The marijuana found by Officer Honey (which was a sufficient quantity to roll about 10 cigarettes) was introduced in evidence.

Defendant testified that she was a student at the University of California at Santa Barbara; she lived in the apartment with two other girls; they often had visitors; three young men regularly ate dinner there; these men had smoked marijuana

in the apartment in the past; she tried it but did not like it; she told them not to bring it around any more; she was studying with a friend when the officers entered her bedroom; when her friend asked if they were free to leave, the officers told them, ''No, you just sit right there.''; when the officer found the cigarette papers in the drawer, she pointed out to him the ''Bull Durham'' cigarette tobacco nearby; she had purchased the tobacco and papers to see if she could roll her own cigarettes; when the officer asked her what was in the bottom of the sack, she said ''I don't know but it is not mine and I don't know where it came from.''; she never said ''Grass, I guess.''

The evidence is ample to support the finding of guilt and defendant does not contend otherwise.

She maintains, however, that because she had not received a prior warning of her constitutional rights, as required by *Miranda* v. *Arizona*, 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974], the trial court committed prejudicial error in admitting the evidence of her statement ''Grass, I guess'' and of the earlier statement admitting ownership of the cigarette papers.

The exclusionary rule of *Miranda* v. *Arizona, supra,* applies to statements which stem ''from custodial interrogation.'' As to what this phrase means, the court declared: ''By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.'' (384 U.S. at p. 444 [16 L.Ed.2d at p. 706].) The court thereafter concluded: ''[W]e hold that when an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subject to questioning, the privilege against self-incrimination is jeopardized. Procedural safeguards must be employed to protect the privilege, . . .'' (384 U.S. at p. 478 [16 L.Ed.2d at p. 726].)

The People concede that the procedural safeguards spoken of in *Miranda*—*i.e.* advice as to rights and waiver thereof, were not employed before the statements in question were made. It is argued, however, that the exclusionary rule is not applicable because, (1) defendant was not then in custody and (2) the statements were not the product of a process of interrogation designed to elicit incriminating statements.

With respect to the custody point, as the above quotes from the *Miranda* opinion make clear, all that is required is

that the defendant be "deprived of his freedom of action in any significant way. He need not be in actual custody. The search warrant in this case, which defendant was shown when the officers entered, authorized the search not only of the premises, but specifically authorized the search of her person as well. It goes without saying that defendant was not free to leave the area while the officers were conducting the search of the room. Had that search proved fruitless, defendant herself was a potential subject for search. To accomplish such a search, the officers were authorized to detain her and call in a female officer. The search warrant effectively advised defendant of this fact. Whether or not the officers also personally so informed her, does not alter the situation. Only one conclusion may be drawn from the evidence: From the time the officers entered, defendant was deprived of her freedom of action in a significant way.

In answer to the second argument urged by the People—that there was no process of interrogation, "The *Miranda* decision does not readopt the four-point test of *Escobedo* [378 U.S. 478 (12 L.Ed.2d 977, 84 S.Ct. 1758)] and *Dorado* [62 Cal.2d 338 (42 Cal.Rptr. 169, 398 P.2d 361)]. The *Miranda* standard is stated in different language." (*People v. Woodberry*, 265 Cal.App.2d 351, 356 [71 Cal.Rptr. 165].) Nothing is said about determining whether there was a process of interrogation designed to elicit incriminating statements. *Miranda* simply requires custodial *questioning.* "[C]onsidering the evil against which *Miranda* is directed, it is the *fact* of custodial interrogation rather than its cause or the accusatory nature of the questions asked which necessitates the application of *Miranda.*" (*People v. McFall*, 259 Cal.App.2d 172, 176 [66 Cal.Rptr. 277].)

Having concluded that the statements made by defendant during the search were inadmissible, it remains to be determined whether the error in admitting them was prejudicial.

"[B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." (*Chapman* v. *California*, 386 U.S. 18, 24 [17 L.Ed.2d 705, 710-711, 87 S.Ct. 824].)

Without doubt, the evidence of defendant's statements was damaging to her defense. The statement, "Grass, I guess" established the presence of one of the elements of the charge, namely, defendant's awareness that what was in the bottom of the sack was marijuana. From her statement admitting ownership of the cigarette papers, which are commonly

used to make marijuana cigarettes, a strong inference arises that the marijuana also belonged to her. The same inference may be drawn from her statement admitting ownership of the three metal boxes found in the shopping bag where the marijuana was secreted.

■ The People point out that in defendant's testimony she admitted that she knew what marijuana was; that she stated she had smoked it in the past. But we can only speculate as to whether she would have testified at all if the evidence of her extrajudicial statements had not been admitted. Until that evidence was introduced, there was scant evidence tending to connect her to the marijuana or to indicate her awareness of its presence and character. Two persons lived in the apartment besides defendant and the place had frequent visitors. At the time the officers found the marijuana, there were several persons on the premises. It is certainly arguable that the introduction of the evidence of defendant's statements induced her to take the stand. Under such circumstances, the rule enunciated in *People* v. *Spencer,* 66 Cal.2d 158, 168 [57 Cal.Rptr. 163, 424 P.2d 715], compels the determination that the error in receiving defendant's extrajudicial statements was not cured by her testimony. (See *People* v. *Coyne,* 263 Cal.App.2d 445, 456-457 [69 Cal.Rptr. 736].)

■ We conclude that the violation of the *Miranda* rule was prejudicial within the meaning of the test laid down in *Chapman* v. *California, supra,* and consequently, defendant's conviction must be reversed.

Additionally, defendant raises a number of contentions concerning the validity of the search warrant used to secure admittance to her residence. For reasons which follow, we consider only one of the contentions.

■ In a pretrial motion under Penal Code, section 995, defendant moved to set aside the information. She did so on the ground that the search warrant was issued without probable cause because it was based on an affidavit alleging facts occurring at least 15 days before its issuance. The court denied the motion.

During the course of the trial defendant raised no objection to the validity of the search warrant or to the sufficiency of the affidavit which supported it; no objection was offered, on a constitutional ground, when the marijuana was introduced. On her motion for new trial, defendant first raised the lapse of time issue and the several other issues which she now urges. The court below refused to consider them since defendant had

not raised them at the trial. With the exception of the lapse of time issue (hereafter discussed), the familiar rule is applicable that the defendant's failure to offer objections at the trial precludes review of the points on appeal. (See *People* v. *Kelsey*, 140 Cal.App.2d 722, 723 [295 P.2d 462].)

An order denying a motion to dismiss an information under Penal Code, section 995, is reviewable on an appeal from the judgment. (*People* v. *Phipps*, 191 Cal.App.2d 448, 454 [12 Cal.Rptr. 681] ; *People* v. *Fernandez*, 172 Cal.App.2d 747, 750-751 [342 P.2d 309].) As already indicated, defendant's motion to dismiss was based on the ground that the warrant was issued without probable cause because the affidavit supporting it alleged stale facts. It follows, therefore, that defendant is entitled to have the point considered by this court in reviewing the propriety of the action of the court below in denying her motion to dismiss.

The affidavit for the search warrant was made (on June 7, 1967) by Officer Evans of the Santa Barbara Police Department. It alleges that for the past 9 years he has been assigned to narcotics investigations; during the months of March through May 1967 he was investigating a suspect named Orlando Catapano; during that time on several occasions undercover officers met with Catapano and discussed the subject of narcotics; on two or more occasions they purchased narcotics from Catapano; it was learned that if more narcotics were desired, Catapano could be reached at the phone number 968-8383.

The affiant Evans further states that on May 24, 1967, he was acting as surveillance officer for Undercover Officer Feldman; he observed Feldman make contact with Catapano and drive to the vicinity of 6565½ Del Playa; Catapano then left Feldman and went into the residence returning a few minutes later; he met Feldman after Catapano left and Feldman showed him two plastic bags containing marijuana which he said he had purchased from Catapano.

The affidavit then states that it was learned that the phone number 968-8383 (where Catapano could assertedly be reached for future buys), was listed to Virginia Wilson (defendant) at the residence at 6565½ Del Playa; the number was called and the person answering indicated that Catapano was out of town at that time but would return in a few days.

The search warrant was issued on June 8, 1967, and the search occurred early the next morning.

■ "A search warrant may be issued by a magistrate only upon probable cause [citations]. This test is met if the affidavit avers competent evidence sufficient to lead a reasonably prudent man to believe that there is a basis for the search [citation]. Law enforcement officers are in a more favorable position when a warrant is obtained [citation], and doubtful or marginal cases may largely be determined by the preference accorded to warrants [citation]." (*People* v. *Kesey*, 250 Cal.App.2d 669, 671 [58 Cal.Rptr. 625].)

■ "Of course, the affidavits must show probable cause to believe contraband is present now, . . ." (*People* v. *Kesey*, *supra*, at p. 671.) But, "A search warrant is not invalid merely because the supporting affidavits relate to facts said to have occurred several days before the warrant was issued. [Citations.]" (*United States* v. *Malugin*, 200 F.Supp. 764, 766.)

■ Here, the affidavit indicates that a cotinuing investigation of Catapano was conducted from March through May of 1967. During this period two or more buys of narcotics were made from him. On May 24, when he sold marijuana to the undercover officer, it was discovered that his "stash-pad" was the Del Playa residence. He reportedly gave the phone number of this residence as the number where he could be reached for future buys. The officers called the number and were told he was out of town for a few days. It may reasonably be inferred that this call was made after the last buy on May 24, and further, that this was the reason the officers waited until June 8th to secure the warrant. We conclude that the few days delay did not make the information "stale"; that the facts alleged support the finding of probable cause.

The final contention of defendant (which concerns the post trial sentencing proceedings which led to the probation order), need not be considered since the judgment must be reversed for the *Miranda* violation.

The judgment is reversed.

Files, P. J., and Kingsley, J., concurred.