[Crim. No. 24333. Second Dist., Div. Two. Dec. 11, 1974.]

THE PEOPLE, Plaintiff and Respondent, v.
FRANCIS DICKINSON, Defendant and Appellant.

**COUNSEL**

Maurice Harwick and Robert M. Pave for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Norman H. Sokolow and Andrew D. Amerson, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**FLEMING, Acting P. J.**—Dickinson pleaded guilty to possession of cocaine for sale (former Health & Saf. Code, § 11500.5, now § 11351). He appeals the judgment (sentence suspended and probation conditioned on six months confinement in the county jail), arguing that the search warrant which uncovered the narcotics had been issued without probable cause.

*Facts*

On 5 January 1973, a Los Angeles police officer, Charles F. Ripley, applied for a warrant to search an apartment on Hi Point Street in Los Angeles, a Mustang automobile and the person of Jone Trotochau (codefendant). For probable cause he set out the following information: A reliable informant told him on 2 January that six ounces of cocaine could be purchased for $5,400 from a woman who would appear at a particular location in Los Angeles. Informant was given funds, kept under surveillance, and was seen to meet for 30 minutes with Jone Trotochau and one John Welsey McCoy at the designated location. Informant reported to Officer Ripley that he had arranged to make the purchase at another location later in the day.

After the meeting Trotochau drove away and was followed by an officer to a four-unit apartment building at the Hi Point address. There, she left her Mustang automobile and disappeared from view near the entrance to Apartment 1. The entrance doors to the other apartments were visible to the officer but the door to Apartment 1 was not. An hour later she reappeared, went to the Mustang, appeared to take something from it, returned to the house, and again disappeared from view in the vicinity of Apartment 1.

Two days later informant in a monitored telephone call to McCoy contracted to buy an ounce of cocaine for $900 at McCoy's residence, delivery to take place at exactly 2 p.m. that day. Informant arranged with Officer Ripley to telephone him as the supposed "money man" from the McCoy home if he saw cocaine on the premises. At 1:50 p.m. another officer saw Trotochau leave the Hi Point apartment, drive to the McCoy residence, and go inside. Within five minutes the informer telephoned Ripley to report he had seen cocaine in Trotochau's purse. Informant and McCoy then left the house, ostensibly to get money for the purchase. Shortly thereafter Ripley arrested Trotochau in the McCoy residence and found an ounce of cocaine within five feet of her purse. In the officer's opinion Trotochau kept a stock of narcotics in the Hi Point apartment, in the Mustang, and on her person.

The warrant was issued on 5 January and served on 12 January. At the preliminary examination, Officer Ripley described its service and the subsequent search: About 5:30 or 6 p.m. codefendant Trotochau was seen to arrive at the Hi Point apartment, which had the name Dickinson on its mail box. About 7 p.m. Ripley and two other officers, all in civilian clothing, knocked on the door of the apartment. Someone asked, "Who's there?" Officer Ripley identified himself and demanded entrance, stating he had a search warrant. There was no response. After waiting approximately a minute and a half, the officers forced entry.

Defendant Dickinson and codefendant Trotochau were in the apartment. On a couch was a box top containing plant material which resembled marijuana. Dickinson, after being served a copy of the warrant and advised of his constitutional rights, took Ripley to the bedroom, opened a drawer, and handed the officer a foil bindle. Dickinson said, "It's cocaine . . . I only sell cocaine. I have been out of work for about a year and a half and I have been selling it for about two years." He then handed over a number of vials and plastic bags of powder, which on testing were found to contain 10.1 grams of heroin and 91.4 grams of cocaine. The plant material proved to be marijuana.

A search of the apartment disclosed a .38 caliber revolver, a 30/30 Winchester rifle, narcotic paraphernalia (spoons, scales, sifter, funnel, mannite, empty gelatin capsules), $1,300 in travelers' checks, $900 in currency, photographs of both defendants, and utility bills in the name of Dickinson. Officer Ripley, whose qualifications as a narcotic expert were stipulated, opined the marijuana was being held for personal use, the cocaine and heroin for purposes of sale.

Defendant's motion in the municipal court to quash the warrant was denied, his motion in the superior court to suppress evidence seized pursuant to the warrant was denied, his motion in the superior court to set aside the information was denied. Thereafter, he pleaded guilty to one of three counts against him.

*Law*

■ On appeal, Dickinson argues the police officer "had no facts whatsoever upon which he might conclude" that codefendant Trotochau kept narcotics in the apartment. We find no substance to this argument. Trotochau was seen to visit the Hi Point apartment on two occasions during the progress of negotiations for the sale of narcotics. On the second occasion an ounce of the drug—the amount of the agreed purchase—was found near her purse. The magistrate could properly infer that codefendant Trotochau maintained a stock of contraband at the Hi Point apartment and could properly issue a warrant to search the premises. (*People* v. *Flores*, 68 Cal.2d 563, 566-567 [68 Cal.Rptr. 161, 440 P.2d 233], cert. den., 393 U.S. 1057 [21 L.Ed.2d 698, 89 S.Ct. 697]; see also *People* v. *Wilson*, 268 Cal.App.2d 581, 588-589 [74 Cal.Rptr. 131].)

*Stay of Execution Pending Appeal*

Although the appeal possesses little legal substance its procedural history deserves comment. This cause grew out of the arrest of defendant on 12 January 1973 and the seizure of heroin and cocaine in his possession. On 20 September 1973 the trial court suspended sentence, imposed probation on defendant, and ordered his confinement for six months in the county jail as a condition of probation. Pending appeal, however, the court stayed confinement in the county jail on condition that defendant prosecute his appeal in timely fashion. At the time of entry of judgment the trial judge advised defendant as follows: "Well, since the defendant will be on probation, I will stay the imposition of the time, that condition, the six months time, pending the appeal. And that stay will be in effect only as long as the appeal is being prosecuted; the

notice of appeal being timely filed, and the filing of appellant's opening brief timely. If that should not occur, then, the imposition of that would no longer be stayed; the stay to be dissolved automatically."

The record on appeal was filed 30 October 1973, and defendant's opening brief became due 30 days thereafter.

In actual fact defendant's opening brief of 9 pages was filed 27 August 1974, some 300 days after the filing of the record. During this period numerous and generous extensions of time were granted defendant by this court, which was never advised by defendant of the condition laid down by the trial judge in his order staying confinement pending appeal. Since criminal appeals are handled on behalf of the State of California by a different office from the one that prosecutes the action in the trial court, no one other than defendant was in a position to advise this court of the condition imposed on defendant by the trial judge.

The futility of the imposition of such a condition clearly appears from these proceedings. In future cases it would be preferable for the trial court to first determine whether in fact the proposed appeal had any merit or substantial plausibility and then decide to stay or not to stay the confinement rather than to issue an order which it cannot effectively enforce and which a defendant can flout with impunity.

The judgment is affirmed.

Compton, J., and Beach, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 6, 1975.