[Crim. No. 416.   Fifth Dist.   Feb. 2, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. ROBERT ALAN BUTTERFIELD, Defendant and Appellant.

Robert C. Dalton, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Doris H. Maier, Assistant Attorney General, Raymond M. Momboisse and Philip R. Birney, Deputy Attorneys General, for Plaintiff and Respondent.

GARGANO, J.—Defendant, a 19-year-old boy, was convicted of oral copulation in violation of Penal Code section 288a. The jury, by a special verdict, also found that the crime was accomplished by means of force and violence, thereby invoking the mandatory three-year prison sentence prescribed

by section 288a. The court denied defendant's application for probation and committed him to the California Youth Authority for the term prescribed by law. Defendant appeals from the judgment of conviction.

About 10:30 p.m. on the evening of June 14, 1966, prosecutrix left her home with a date who took her to a beach at Brannan Island State Park arriving around 11:30 p.m. Shortly thereafter several carloads of boys also arrived at the park. The boys commenced to drink. The prosecutrix then tried to get her date to take her home, but he refused. Later the prosecutrix returned to her date's car where several of the young men accosted her and made improper advances. When she tried to run away the boys threw her to the beach and ripped her clothes off. Then between five and ten of the boys began to sexually assault her; some took turns raping her and some forced their penes into her mouth.

During this outrageous sexual onslaught prosecutrix' protests were ignored and she was warned to cooperate; otherwise, she would be thrown in the river. The victim returned to her home at about 4:45 a.m. of the following morning. Her mother was awake at that hour and heard her daughter moaning and screaming as she ran across the street toward the house. She was hysterical when she entered her home, her brassiere was gone, her pants torn and she was carrying one remaining shoe. Sand was in her hair, eyes and mouth. There was a bruise visible over one eye and a scratch on her neck. A subsequent medical examination at the hospital disclosed bruises on the victim's left breast, left portion of her abdomen and above one eye. Sand and mud were also found along the entire length of her vaginal tract.

Afterwards the victim along with her mother and stepfather returned to the scene where they met an officer from the Sacramento sheriff's office. There they recovered numerous items of the victim's clothing from the previous night.

At the trial the victim could not identify defendant as one of the boys who had so brutally assaulted her. However, a witness, Danny Williams, testified that he saw appellant force his penis into the victim's mouth. He stated that he attempted to intervene but decided against further interference because of fear of what would happen to him if he persisted. Williams testified that after he left the area he heard the victim scream. Defendant took the stand and admitted that he knowingly and wilfully placed his penis in the victim's mouth. His defense was based entirely on the theory that the victim was actually a willing participant.

Defendant contends that the trial court committed prejudicial error when it admitted into evidence the statements which he made to Inspector Stanley E. Kirkman of the Sacramento County sheriff's office at defendant's home approximately 10 days after the crime was committed. Inspector Kirkman and his companion, Sergeant Davis, were invited into the house by defendant's mother after they had identified themselves as police officers. Kirkman advised Mrs. Butterfield that he wanted to talk to defendant alone and suggested that the interview take place in the kitchen where he could use the kitchen table to take notes. Mrs. Butterfield sought to participate in the interview but then acquiesced when Kirkman told her that he did not have to talk to defendant in her presence since defendant was over 18 years of age. Defendant's mother retired to the living room where she remained throughout the interview which lasted approximately 15 minutes. The door between the kitchen and the living room remained open.

After Mrs. Butterfield left the room Kirkman informed defendant that he was a suspect in a rape and perversion case. He also purported to advise defendant of his constitutional rights as follows: ''I want to advise you of your rights, your constitutional rights, your rights to remain silent; your right that you do not have to answer any questions that I put before you; your right to an attorney, either retained by yourself or furnished by Sacramento County. I want to advise you that anything that you say may be used against you or for you.'' Defendant stated that he understood his rights and that he was willing to discuss the matter with the officers. After first denying any involvement, defendant admitted that he had the prosecutrix orally copulate him but insisted that it was voluntary.

It is clear that when the officers talked to defendant at his home the investigation was no longer a general inquiry into an unsolved crime but had focused on defendant as a suspect. It is also clear that Inspector Kirkman did not advise defendant of his constitutional rights according to the precise requirements specified by the United States Supreme Court in *Miranda* v. *Arizona*, 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]. The officers called at defendant's home only a few days after the *Miranda* decision; consequently, no one told defendant that he was entitled to the presence of a lawyer during the interview. However, we nevertheless conclude that the officers did not violate the defendant's constitutional rights. The interrogation was not custodial in the

sense visualized by the United States Supreme Court in the *Miranda* decision, nor was it conducted under circumstances fraught with the dangers that the court was seeking to eliminate. Significantly, when the court discussed the privilege against self-incrimination in *Miranda,* it declared: ''We are satisfied that all the principles embodied in the privilege apply to informal compulsion exerted by law-enforcement officers during in-custody questioning. An individual swept from familiar surroundings into police custody, surrounded by antagonistic forces, and subjected to the techniques of persuasion described above cannot be otherwise than under compulsion to speak. As a practical matter, the compulsion to speak in the isolated setting of the police station may well be greater than in courts or other official investigations, where there are often impartial observers to guard against intimidation or trickery.'' (384 U.S. 461 [16 L.Ed.2d at p. 716].)

When the officers called at defendant's home they were not armed with warrants nor did they give any indication that an arrest was imminent or contemplated. The officers interviewed the defendant in the friendly and familiar environs of his own home with his mother seated only 15 feet away. Although Officer Kirkman asked her to leave the room, it is reasonable to believe that he made the request in deference to her feelings since the subject matter was obviously distasteful. Moreover, the kitchen door remained open at all times and neither of the officers used compulsion, threats or trickery to make the defendant talk. To the contrary, Officer Kirkman immediately informed defendant that he was a suspect in a rape and perversion case and that he could remain silent, that anything he said could be used against him, and that he was entitled to the services of a lawyer retained or appointed by the County of Sacramento. In addition, Inspector Kirkman testified that he did not contemplate arresting the defendant, or keeping him from leaving if he had chosen to remain silent, not even if he told the officers to ''go to Hell.'' This testimony is corroborated by the fact that the officers did not arrest defendant at that time even though he admitted complicity in the crime. Thus, there was substantial evidence for the trial court to find that defendant was not in actual custody at the time of the questioning and that no admonition of any kind was necessary. And the trial court's finding in this respect was not palpably erroneous.

█ It is of course settled, in this state at least, that custodial interrogation occurs not only when a person is in fact

deprived of his freedom in any significant way, but also when he is led to believe, as a reasonable person, that he is so deprived (*People* v. *Arnold,* 66 Cal.2d 438 [58 Cal.Rptr. 115, 426 P.2d 515]). Thus, it is arguable and even conceivable, as defendant asserts, that defendant believed he was in custody and compelled to answer the questions which the officers asked. In fact, defendant points to his youth, the fact that he cried during the interview, and to the exclusion of his mother from the kitchen, as conclusive evidence that this was so.

We do not believe that the trial court was compelled to find, as a matter of law, that defendant was led by the officers into believing that he was in custody and, hence, that the interrogation was custodial in that sense. Defendant did not testify or even assert during the trial that he believed that he was compelled to answer the officers' questions or that he was not free to terminate the interview at any time. To the contrary, the record indicates that, although both sides argued that the determination of custody rested upon the subjective belief of the defendant, the only evidence that the court had upon which he could judge the defendant's belief was the testimony of the circumstances and acts of the officers. In fact, the record indicates that the trial court made a conscientious effort to resolve the issue and asked for further witnesses. And yet, the defense failed to call either the defendant or his mother, the only other people who could testify as to what occurred, even though both were in court.

Manifestly, when a defendant is not in actual custody and the subjective test is used to find custodial interrogation, the defendant's state of mind is the critical factor, and his testimony as to what he believed is essential to a proper determination of the question as to whether the officers misled him.

As we have stated, there was substantial evidence for the court to find in the instant case that the officers did not intend to deprive defendant of his freedom in any significant manner when they interviewed him in his home, and that he was free to terminate the interview at any time without risk of arrest. Thus, if defendant was misled into believing that he was in custody or that he would be arrested if he did not talk to the officers, it was incumbent upon him to bring this matter to the attention of the court. In short, the prosecution laid a sufficient foundation to show that Inspector Kirkman's interrogation of defendant was not custodial, and defendant could no longer sit idly by and say nothing on the issue of his subjective belief, particularly when he testified on other matters re-

lating to his defense. Defendant's failure to testify on this crucial issue could well have induced the court to reasonably believe that the officers did not mislead him at the interview.

The *Arnold* case, which is strongly relied upon by the defendant, is distinguishable. First, in that case the defendant was not interviewed in the familiar surroundings of her own home for only 15 minutes, with a close relative standing by only a few feet away. She was summoned to the district attorney's office where she was interviewed by a deputy district attorney in a police-like atmosphere for almost an hour and forty-five minutes. And it is apparent that when the California Supreme Court invoked the subjective test it had in mind the effect on defendant's state of mind of the alien surroundings of the district attorney's office, with police officers standing by. This follows for the court reviewed other cases on the subject of custodial interrogation and stated: "The vice of the custodial interrogation which these cases condemned lay in the psychological coercion implicit in interrogation in the isolated chamber from which the suspect may reasonably believe he cannot leave. In such circumstances the person detained or arrested finds himself completely and suddenly cut off from freedom of movement. An involuntary immobilization by law enforcement officers dramatizes the fact that the individual stands suspected or accused of crime. Lacking knowledge of his constitutional rights, he may feel that he can extricate himself from the situation only by submitting to interrogation. He may reasonably believe that if he attempts to leave the interrogation chamber the authorities will impose immediate detention." (66 Cal.2d at p. 447.) The court in *Arnold* also stressed the excerpt from O'Hara's Fundamentals which was quoted in *Miranda* v. *Arizona, supra,* 384 U.S. 436 at pages 449-450 [16 L.Ed.2d 694 at pp. 709-710] : " 'If at all practicable the interrogation should take place in the investigator's office or at least in a room of his own choice. The subject should be deprived of every psychological advantage. In his own home he may be confident, indignant, or recalcitrant. He is more keenly aware of his rights and more reluctant to tell of his indiscretions or criminal behavior within the walls of his own home. Moreover, his family and other friends are nearby, their presence lending moral support. In his own office, the investigator possesses all the advantages. The atmosphere suggests the invincibility of the forces of the law.' " (66 Cal.2d, fn. 8, p. 449.)

And, second, in *Arnold* the defendant testified that she be-

lieved that she had no alternative other than to comply with the authoritative interrogation. The deputy district attorney did not even tell her that she did not have to talk to him. In the instant case defendant was told that he did not have to talk to the officers, and, as we have stated, he did not testify that he believed that he was compelled to answer their questions.

Finally, in *Arnold,* the court had erroneously ruled that a request for an attorney by defendant constituted an essential element to the application of the *Escobedo* rule.[1] Thus, the trial court gave no consideration to the pressures exerted to detain the defendant or to any other circumstances which might have induced the defendant to believe that she could not leave freely. Accordingly, the Supreme Court directed the trial court to take these matters into consideration upon retrial before it ruled on the admissibility of defendant's statements. In the instant case Officer Kirkman was carefully examined and cross-examined and all facts and circumstances were considered by the trial court before the defendant's statements were admitted into evidence.

Defendant next contends that the court erred when it refused his requested instructions that oral copulation with force includes the lesser included offenses of oral copulation without force, contributing to the delinquency of a minor and engaging in lewd or dissolute conduct in a public place. This contention is also without substantial merit.

It is absolutely clear that oral copulation with force and oral copulation without force are not separate offenses under Penal Code section 288a. To the contrary, oral copulation is the offense proscribed by section 288a, and the use of force simply increases the maximum penalty. The section provides in pertinent part: ''Any person participating in an act of copulating the mouth of one person with the sexual organ of another is punishable by imprisonment in the state prison for not exceeding 15 years, or by imprisonment in the county jail not to exceed one year; provided, however, whenever any person is found guilty of the offense specified herein, *and it is charged and admitted or found to be true . . . that he had compelled the other's participation in such act by force, violence, duress, menace, or threat of great bodily harm, he shall be punished by imprisonment in the state prison for not less*

---

[1] The court referred to the *Escobedo* rule since the case was tried prior to *Miranda* v. *Arizona, supra,* 384 U.S. 436. However, the court adopted the *Miranda* test on the issue as to whether the interrogation was custodial.

*than three years. The order of commitment . . . shall . . .
state whether a person convicted hereunder has compelled co-
participation in his act by force, violence, duress, menace or
threat of great bodily harm.''* (Italics added.)

Thus, the court accurately told the jury: ''Any person who
participates in the act of copulating the mouth of one person
with the sexual organ of another is guilty of a crime such as
that charged against the defendant in Count Two of the infor-
mation.'' And then correctly added: ''It is charged in Count
Two of the Information that, at the time the offense therein
described was committed, the perpetrator of such offense com-
pelled the participation in such act by the other party to such
act by force, violence, duress, menace or threat of great bodily
harm.

''If you find the defendant guilty of the crime thus charged
in Count Two of the Information it will become your duty to
determine whether or not such participation by the other par-
ty to the act was compelled by any of such means and you will
include a finding on that question in your verdict.''[2]

It is also clear that the offenses of contributing to the de-
linquency of a minor and engaging in lewd or dissolute con-
duct in a public place are not offenses necessarily included
within the offense of oral copulation in violation of section
288a. A person may commit oral copulation without contrib-
uting to the delinquency of a minor or without committing the
act in a public place. As stated by the court in *People* v. *Har-
ris,* 191 Cal.App.2d 754, 757 [12 Cal.Rptr. 916] : '' 'The test
in this state of a necessarily included offense is simply that
where an offense cannot be committed without necessarily
committing another offense, the latter is a necessarily in-
cluded offense.' '' And in an analogous situation the California
Supreme Court in *In re Hess,* 45 Cal.2d 171, 174 [288 P.2d 5],
stated : ''Forcible rape (Pen. Code, § 261, subd. 3), can be
committed without contributing to the delinquency of a mi-
nor, e.g., forcible rape of a woman 21 years of age or more.
The latter offense, therefore, is not necessarily included in the
former.''

The judgment is affirmed.

Conley, P. J., and Stone, J., concurred.

---

[2]The verdict form which the jury signed read as follows: ''We, the
Jury in the above-entitled cause, find the Defendant Robert Butterfield
Guilty of the crime of Violation of section 288a of the Penal Code of the
State of California; and further find that the Girl's participation in such
an Act was compelled by . . . force, duress, menace or threat of great
bodily harm.''