[Crim. No. 37204. Second Dist., Div. Four. June 3, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
CLIFFORD REED FARRIS, Defendant and Appellant.

**COUNSEL**

Richard H. Levin, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Shunji Asari and Otis D. Wright, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

EARLY, J.*—Defendant appeals from a judgment of conviction following jury trial of the burglary in the first degree, two counts of burglary and one count of attempted burglary. He contends that the trial court erred in admitting evidence for purposes of impeachment of his responses to two questions asked without prior Miranda[1] warnings following discovery of stolen jewelry during a search of his bedroom conducted pursuant to a condition of his parole. He further contends that his identification in court by several witnesses was tainted by impermissibly suggestive pretrial identification procedures.

---

*Assigned by the Chairperson of the Judicial Council.

[1]Miranda v. Arizona (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974].

Defendant was on parole with the California Youth Authority following a burglary conviction. Deputy Sheriff Price suspected that defendant had committed a nighttime burglary in which jewelry had been stolen. He informed defendant's parole agent, Hooper, who shared the suspicion and decided to search defendant's home.[2] Price, Hooper and another parole agent went to defendant's home, where they advised him that he was a suspect and that they intended to search his bedroom. The search uncovered items of jewelry resembling many of those taken in the burglary being investigated. Without first advising defendant of his rights to remain silent and to the services of an attorney, Price asked defendant to whom the jewelry belonged, to which he replied "to me"; and where he got it, to which defendant replied "from the jewelry store." Following denial of motions under Penal Code section 1538.5, these answers were received in evidence to impeach defendant's testimony that he had swapped five sticks of marijuana for the jewelry with a stranger at an all night bowling alley.

 No contention is made that the search was improper. Such parole conditions are clearly valid as are reasonable searches pursuant thereto. (*People* v. *Mason* (1971) 5 Cal.3d 759 [97 Cal.Rptr. 302, 488 P.2d 630]; *People* v. *Constancio* (1974) 42 Cal.App.3d 533, 540 [116 Cal.Rptr. 910]; *People* v. *Denne* (1956) 141 Cal.App.2d 499, 510 [297 P.2d 451].) Defendant had validly waived his rights under the Fourth Amendment of the United States Constitution against a warrantless search of his home.

*Miranda* v. *Arizona, supra,* 384 U.S. 436, interprets the Fifth Amendment privilege against self-incrimination to require the exclusion of statements made by a defendant, whether exculpatory or inculpatory, stemming from custodial interrogation unless the accused has first been informed of his "right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." (384 U.S. at p. 444 [16 L.Ed.2d at pp. 706-707].) By "custodial interrogation," the opinion states that "we mean questioning initiated by law enforcement officers after a person has been taken into custody *or otherwise deprived of his freedom of action in any significant way.*" (384 U.S. at p. 444 [16 L.Ed.2d at p. 706]; italics added.)

---

[2] A condition of defendant's parole stated that: "You shall submit to a search of your person, your residence, and any property under your control by a Youth Authority Parole Agent or, for a specific purpose, by any peace officer designated by a Youth Authority Parole Agent."

Price and Hooper were law enforcement officers (Pen. Code, §§ 830.1 and 830.5) and the questions asked constituted an interrogation. (*People* v. *Rucker* (1980) 26 Cal.3d 368, 386 [162 Cal.Rptr. 13, 605 P.2d 843].) As a prisoner released on parole, defendant was in constructive custody (*People* v. *Denne, supra*, 141 Cal.App.2d at p. 507), but in *In re Martinez* (1970) 1 Cal.3d 641 [83 Cal.Rptr. 382, 463 P.2d 734], cert. den. 400 U.S. 851 [27 L.Ed.2d 88, 91 S.Ct. 71], the opinion notes that "Although past cases have sometimes declared that a parolee is in 'constructive custody' or 'without liberty,' 'fictions of "custody" and the like ... cannot change the reality of a parolee's conditional freedom and cannot affect the constitutional protections surrounding his interest in that conditional freedom.'" (1 Cal.3d at p. 646.)

*People* v. *Gastelum* (1965) 237 Cal.App.2d 205 [46 Cal.Rptr. 743] discusses the admission into evidence of a defendant's responses to questioning by his parole officer without prior advice of his rights to counsel and to remain silent, as then required by *People* v. *Dorado* (1965) 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361]. Page 209 states that "The only novel question is whether, by analogy to the rule on search and seizure, defendant's status as a parolee negatived his constitutional right to be advised of his right to counsel or to remain silent. The Supreme Court, in *People* v. *Dorado, supra*, upheld the right of a felon incarcerated in the state prison to be 'effectively informed' of his right to counsel and of his 'absolute right to remain silent' under the Fifth Amendment. Certainly a parolee in constructive custody is no less entitled to these constitutional rights than is a felon in actual custody." *Mathis* v. *United States* (1968) 391 U.S. 1 [20 L.Ed.2d 381, 88 S.Ct. 1503] holds that if a prisoner in a state prison is not first given warnings of his right to remain silent and right to counsel before being interrogated regarding another case, his responses are not admissible.

In accord is *In re Martinez, supra*, 1 Cal.3d 641, which states that "... the defendant's parole status, of course, did not permit the police to interrogate the defendant in connection with the suspected criminal activity without first apprising him of his constitutional rights. The strictures of *Dorado* apply whenever the police initiate custodial interrogation in connection with their investigation of a new criminal matter; indeed, in *Dorado* itself, the defendant was an incarcerated prisoner, who had allegedly committed a crime within the prison and who was interrogated by prison officials. [Citation.] The Fifth Amendment rights of parolees equally demand these protections. [Citations.] Thus the statements elicited from defendant Martinez in the instant case were

obtained in violation of his constitutional rights and were properly determined to be inadmissible at his criminal trial." (1 Cal.3d at pp. 647-648.)

It is settled in this state that custodial interrogation appears not only when a person is in fact deprived of his freedom in any significant way, but also when as a reasonable person he is led to believe that his freedom of movement has been restricted by the pressures of official authority. (*People v. Arnold* (1967) 66 Cal.2d 438, 448 [58 Cal.Rptr. 115, 426 P.2d 515]; *People v. Blouin* (1978) 80 Cal.App.3d 269, 283 [145 Cal.Rptr. 701]; *People v. Wilson* (1968) 268 Cal.App.2d 581, 585-586 [74 Cal.Rptr. 131].)

As a condition of his parole, defendant herein had consented to a search not only of his residence but also of his person. His parole officer could take him into detention at any time. It goes without saying that, as in *People v. Wilson, supra,* 268 Cal.App.2d 581, he was not free to leave while his bedroom was being searched. Had that search proved fruitless, he himself was a potential subject for search. He knew that. From the time that Price and Hooper arrived, defendant was obviously deprived of his freedom in a significant way.

*Oregon v. Mathiason* (1977) 429 U.S. 492 [50 L.Ed.2d 714, 97 S.Ct. 711] is distinguishable. In response to a telephone call, the defendant therein voluntarily came to a police station for questioning about a burglary, was immediately informed that he was not under arrest, and left without hindrance at the close of his interview. His freedom to depart was not restricted in any way. The opinion holds *Miranda* to be inapplicable because Mathiason was not "deprived of his freedom of action in any significant way." (429 U.S. at p. 495 [50 L.Ed.2d at p. 719].)

*People v. Robinson* (1969) 1 Cal.App.3d 555 [81 Cal.Rptr. 666] is likewise distinguishable in that at the time of the questioning therein the police officer didn't know, and had no reasonable basis to believe, that the objects he found in the defendant's possession were stolen. Just the opposite is true herein.

*In re Richard T.* (1978) 79 Cal.App.3d 382 [144 Cal.Rptr. 856] reached a different result because there the parole officer was investigating only a violation of a parole condition which was not a crime (possession in his home of a gun) and only incidentally discovered the crime (that the gun was stolen). Herein, the parole agent at all times

was investigating a new offense, a burglary, and the investigation was always focused on defendant. Furthermore, once defendant was found to be in possession of the stolen jewelry, probable cause to arrest him existed.

In *Harris* v. *New York* (1971) 401 U.S. 222 [28 L.Ed.2d 1, 91 S.Ct. 643], the United States Supreme Court ruled that trustworthy custodial statements made without prior *Miranda* warnings were admissible to impeach a defendant, if accompanied by an appropriate jury instruction, but not as evidence of guilt. The opinion notes that it is one thing to say that the government cannot make an affirmative use of evidence unlawfully obtained, but "quite another to say that the defendant can turn the illegal method by which evidence . . . was obtained to his own advantage, and provide himself with a shield against contradiction of his untruths." (401 U.S. at p. 224 [28 L.Ed.2d at p. 4].)

"Assuming that the exclusionary rule has a deterrent effect on proscribed police conduct, sufficient deterrence flows when the evidence in question is made unavailable to the prosecution in its case in chief.

"Every criminal defendant is privileged to testify in his own defense, or to refuse to do so. But that privilege cannot be construed to include the right to commit perjury. [Citations.] Having voluntarily taken the stand, petitioner was under an obligation to speak truthfully and accurately, and the prosecution here did no more than utilize the traditional truth-testing devices of the adversary process." (401 U.S. at p. 225 [28 L.Ed.2d at p. 4].)

"The shield provided by *Miranda* cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances." (401 U.S. at p. 226 [28 L.Ed.2d at p. 5].)

The California Supreme Court has refused to follow *Harris* v. *New York, supra,* and has held that the privilege against self-incrimination of article I, section 15, of the California Constitution "precludes use by the prosecution of any extrajudicial statement by the defendant, whether inculpatory or exculpatory, either as affirmative evidence or for purposes of impeachment, obtained during custodial interrogation in violation of the standards declared in *Miranda* and its California progeny. . . . *Harris* is not persuasive authority in any state prosecu-

tion in California." (*People v. Disbrow* (1976) 16 Cal.3d 101, 113 [127 Cal.Rptr. 360, 545 P.2d 272].)

*People v. Disbrow, supra*, 16 Cal.3d 101, can be distinguished because it involved prior inculpatory admissions which a jury might view as evidence of guilt even in the face of a limiting instruction (16 Cal.3d at p. 112), whereas that danger is absent from the case at bar which instead involves prior exculpatory statements. However, *People v. Rucker, supra*, 26 Cal.3d 368, emphatically reminds us that "if there has been a failure to comply with *Miranda*'s safeguards, '*any* [resulting] extrajudicial statement by the defendant, whether inculpatory or exculpatory,' is inadmissible 'either as affirmative evidence or for purposes of impeachment.'" (26 Cal.3d at p. 390; italics in original.) As an intermediate appellate court, we are bound by these authoritative rulings.

■ The erroneous admission herein of defendant's impeaching answers was clearly prejudicial as it damaged his uncorroborated alibi testimony. It compelled him to admit that he had lied to the officers during the search. This alone may well have caused the jury to reject his entire testimony.

Regarding the pretrial view of a photographic lineup by prosecution witnesses (People's trial exhibit 5), we find nothing impermissibly suggestive or improper, nor do we find error in the use of the corporeal lineup.

The case is reversed and remanded for further proceedings consistent with this opinion.

Files, P. J., and Kingsley, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied July 30, 1981. Mosk, J., and Richardson, J., were of the opinion that the petition should be granted.