[Crim. No. 21711. First Dist., Div. One. Jan 12, 1982.]

THE PEOPLE, Plaintiff and Respondent, v.
NATHAN DEWEY MURPHY, Defendant and Appellant.

744

COUNSEL

Paula F. Schmidt, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, William D. Stein, Assistant Attorney General, Robert R. Granucci and Michael Buzzell, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

GRODIN, J.—Appellant Nathan Dewey Murphy stands convicted, after jury trial, of first degree murder with use of a deadly and dangerous weapon. In the course of his trial, evidence was admitted of certain statements which appellant had made in the presence of a police officer. Appellant's sole contentions of error are (1) that the statements were inadmissible because they were not preceded by a *Miranda* (*Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974], *passim*) warning; and (2) that appellant was denied the effective assistance of counsel when his attorney arranged for him to speak with a police officer in the attorney's office, and taped the discussion. We find no reversible error, and affirm.

We first describe the events immediately preceding the statements and conduct complained of. On August 27, 1977, Hilardo Sebay went fishing near Brothers Island in San Pablo Bay and found a body, later determined to be that of one Lawrence Brown. The Coast Guard retrieved the body, which was found to be fully clothed and wrapped in a green tarp, with rope and electrical wire tied around its waist, and a large anchor and chain attached to it. An autopsy revealed that death had been caused by traumatic head injuries. Further inquiry apparently led Richmond police, who were investigating the murder, to conclude that a yellow boat, owned by appellant, had been implicated in disposing of the body, and a search warrant was obtained for that boat.

The first statement which appellant contends was erroneously admitted into evidence occurred on August 31, 1977, at appellant's house. Officer Tye of the Richmond Police Department, testified outside the presence of the jury concerning the background of that statement as follows. Armed with a search warrant for the boat, Officer Tye went to appellant's house and knocked on the door. "[A]t this point he wasn't a suspect. It was early in the investigation and we didn't really know who Mr. Murphy was regarding the case." When appellant came to the door, Tye identified himself as a Richmond police officer and said he wanted to talk to appellant about the death of Lawrence Brown. Appellant immediately responded that he wanted to contact his attorney, and he "started to close the door and move quickly back to the interior of the room at which time I observed him pick up a telephone." Appellant later returned to the door with the telephone in hand, and at this point Tye showed him the search warrant, and said, "we have a search warrant for your boat and at that point he indicated that he no longer had the boat, the boat had been destroyed three months ago and taken to a dump." Tye knew this statement to be false, since he had seen the boat on August 29 at the rear of appellant's residence. Appellant then continued to talk on the telephone, apparently to his attorney, and arrangements were made for Tye to talk with appellant at his attorney's office later that day.

The second statement which appellant contends was erroneously admitted into evidence occurred later that day, at the office of appellant's attorney, Gene Donaldson. Again, Officer Tye described the circumstances at a hearing outside the presence of the jury. Appellant drove to Donaldson's office on his own, and was talking to Donaldson when the police arrived. The officers explained that they had a search warrant for the boat, and were interested in talking to appellant regarding the location of the boat at that time. Donaldson supplied a tape recorder, and informed the police officers that he was taping the interview. Questioned about the boat, appellant repeated the statement that he had made earlier to Officer Tye—that the boat had been destroyed and taken to a dump. Officer Tye's testimony concerning these two statements, as well as the tape of the second statement, was admitted in evidence over appellant's *Miranda* objection.

■ The procedural safeguards set out in *Miranda* protecting the Fifth Amendment right against self-incrimination come into play only when "*custodial* interrogation" is involved. (384 U.S. at p. 444 [16 L.Ed.2d at pp. 706-707]; *People* v. *Farris* (1981) 120 Cal.App.3d 51

[174 Cal.Rptr. 424]; *People* v. *Blouin* (1978) 80 Cal.App.3d 269, 283 [145 Cal.Rptr. 701].) "*Miranda* warnings are required only where there has been such a restriction on a person's freedom as to render him 'in custody.'" (*Oregon* v. *Mathiason* (1977) 429 U.S. 492, 495 [50 L.Ed.2d 714, 719, 97 S.Ct. 711].) "While arrest is not a condition precedent to the right to *Miranda* and *Dorado* [*People* v. *Dorado* (1965) 62 Cal.2d 338, 358-364 (42 Cal.Rptr. 169, 398 P.2d 361)] warnings, custody is: the vice requiring the prophylaxis of the notice of rights is the inherently coercive atmosphere pervading *custodial* interrogation. [Citation.]" (*People* v. *Leach* (1975) 15 Cal.3d 419, 443 [124 Cal.Rptr. 752, 541 P.2d 296].)

■ Custodial interrogation means "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." (*Miranda* v. *Arizona, supra*, 384 U.S. at p. 444 [16 L.Ed.2d at p. 706].) In California, it is well settled that custodial interrogation can occur without a formal arrest. It exists where the defendant is either "physically deprived of his freedom of action in any significant way or is led to believe, as a reasonable person, that he is so deprived." (*People* v. *Arnold* (1967) 66 Cal.2d 438, 448 [58 Cal.Rptr. 115, 426 P.2d 515]; *People* v. *Farris, supra,* 120 Cal.App.3d at p. 56.) It has been said: "When an arrest has not yet taken place, the factors considered in deciding whether custody has attached are many. Among the most important are: (1) the site of the interrogation; (2) whether the investigation has focused on the suspect; (3) whether the objective indicia of arrest are present; and (4) the length and form of questioning." (*People* v. *Herdan* (1974) 42 Cal.App.3d 300, 306-307 [116 Cal.Rptr. 641], fns. omitted; see also *People* v. *Blouin, supra*, 80 Cal.App.3d at p. 283; *People* v. *Arnold, supra*, 66 Cal.2d at p. 449.)

■ In the present case we conclude that appellant was neither in custody when Officer Tye presented him with the search warrant for the boat at his home nor while he was being questioned about his boat at his attorney's office. In the first instance the questioning took place in front of appellant's home. It was short in duration and was nonaccusatorial. Officer Tye merely informed appellant that he was investigating the death of Lawrence Brown, had a search warrant for appellant's boat and asked where it was located. There was no evidence that appellant was or believed he was physically restricted by Officer Tye. (See *People* v. *Butterfield* (1968) 258 Cal.App.2d 586 [65 Cal.Rptr. 765].) Furthermore, Officer Tye testified that Murphy was

not a suspect at this point, and he was simply in the early stages of investigation. (See *People* v. *Blouin, supra*, 80 Cal.App.3d at p. 283.)

The second encounter, in the attorney's office, occurred at appellant's suggestion and, apparently, with his attorney's approval. The questioning, which focused solely on the location of the boat, was not coercive in tone, and appellant was informed he was only being questioned as a witness. As in the first instance there was no evidence that appellant was in any way restricted or believed to be restricted by the police, and appellant makes no argument now that such was his belief. (See *People* v. *Butterfield, supra*, 258 Cal.App.2d at p. 591.) Again, there is ample evidence that appellant was not in custody and thus a *Miranda* warning was not mandated.[1]

■ Appellant's contention based upon ineffective counsel requires little discussion. For Sixth Amendment purposes, the right to counsel "attaches only at or after the time that adversary judicial proceedings have been initiated" (*Kirby* v. *Illinois* (1972) 406 U.S. 682, 688 [32 L.Ed.2d 411, 417, 92 S.Ct. 1877]); the California Supreme Court has held that there is no requirement for the presence of a prospective defendant's counsel during even a *custodial* interrogation occurring in the investigatory stage of a case, before the institution of criminal charges, if the prospective defendant has been properly advised of his *Miranda* rights (*People* v. *Duck Wong* (1976) 18 Cal.3d 178, 184-187 [133 Cal.Rptr. 511, 555 P.2d 297]); and nothing in *People* v. *Bustamante* (1981) 30 Cal.3d 88 [177 Cal.Rptr. 576, 634 P.2d 927], holding that a defendant has the right under article I, section 15 of the California Constitution to assistance of counsel at a preindictment lineup, would appear to alter that rule. Moreover, we are cited to no authority which suggests, and we are not prepared to say, that an attorney is incompetent simply because he advises his client to talk with investigating officers, or tapes the conversation.

Appellant's claim of entitlement to *Sage* [*People* v. *Sage* (1980) 26 Cal.3d 498 (165 Cal.Rptr. 280, 611 P.2d 874)] credits is subject to determination by the Department of Corrections, in accordance with that opinion.

---

[1]Appellant does not contend, nor is there room in these facts for a contention, that the questioning at his residence violated his right to counsel. (Cf. *People* v. *Leach, supra*, 15 Cal.3d at p. 443.) The time for *Massiah* (*Massiah* v. *United States* (1964) 377 U.S. 201 [12 L.Ed.2d 246, 84 S.Ct. 1199]) had not yet arrived.

The judgment is affirmed.

Elkington, Acting P. J., and Ragan, J.,* concurred.

A petition for a rehearing was denied February 3, 1982.

---

*Assigned by the Chairperson of the Judicial Council.