TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

| | |
|---|---|
| OPINION | : |
| | :     No. 91-1205 |
| of | : |
| | :     <u>OCTOBER 8, 1992</u> |
| DANIEL E. LUNGREN | : |
| Attorney General | : |
| | : |
| ANTHONY S. DA VIGO | : |
| Deputy Attorney General | : |
| | : |

THE HONORABLE GARY T. YANCEY, DISTRICT ATTORNEY, COUNTY OF CONTRA COSTA, has requested an opinion on the following question:

During the investigative phase of a criminal or civil law enforcement proceeding, does Rule 2-100 of the California Rules of Professional Conduct prohibit a public prosecutor, or an investigator under the direction of a public prosecutor, from communicating with a person known to be represented by counsel, concerning the subject of the representation, without the consent of such counsel?

CONCLUSION

During the investigative phase of a criminal or civil law enforcement proceeding, Rule 2-100 of the California Rules of Professional Conduct does not prohibit a public prosecutor, or an investigator under the direction of a public prosecutor, from communicating with a person known to be represented by counsel, concerning the subject of the representation, without the consent of such counsel.

ANALYSIS

In order to protect the public and to promote respect for and confidence in the legal profession, the Board of Governors of the State Bar of California, with the approval of the Supreme Court, is authorized to formulate and enforce rules of professional conduct. (Bus. & Prof. Code, § 6076; Rules Prof. Conduct, Rule 1-100.)[1]  The rules are binding upon all members of the State Bar, including public prosecutors

---

[1]All references hereafter to the Business and Professions Code are by section number only; all references hereafter to the Rules of Professional Conduct are by rule number only.

(§ 6077; *Dix v. Superior Court* (1991) 53 Cal.3d 442, 452; *Taliaferro v. Locke* (1960) 182 Cal.App.2d 752, 756),[2] and apply in civil and criminal cases alike (*Yorn v. Superior Court* (1979) 90 Cal.App.3d 669, 675; *Uhl v. Municipal Court* (1974) 37 Cal.App.3d 526, 535-536).

The focus of this opinion is upon Rule 2-100. It provides as follows:

"(A) While representing a client, a member shall not communicate directly or indirectly about the subject of the representation with a party the member knows to be represented by another lawyer in the matter, unless the member has the consent of the other lawyer.

"(B) For purposes of this rule, a `party' includes:

"(1) An officer, director, or managing agent of a corporation or association, and a partner or managing agent of a partnership; or

"(2) An association member or an employee of an association, corporation, or partnership, if the subject of the communication is any act or omission of such person in connection with the matter which may be binding upon or imputed to the organization for purposes of civil or criminal liability or whose statement may constitute an admission on the part of the organization.

"(C) This rule shall not prohibit:

"(1) Communications with a public officer, board, committee, or body;

"(2) Communications initiated by a party seeking advice or representation from an independent lawyer of the party's choice; or

"(3) Communications otherwise authorized by law."

The issue presented for resolution is whether a public prosecutor, or an investigator under the direction of a public prosecutor,[3] is "otherwise authorized by law" within the meaning of subparagraph (C)(3), to communicate, during the course of a criminal or civil law enforcement investigation, with a person the prosecutor knows to be represented by another lawyer in the matter, without the consent of the other lawyer. We conclude that the prosecutor would be so authorized by law.[4]

---

[2]Every person admitted and licensed to practice law in California is a member of the State Bar. (Cal. Const., art. VI, § 9; § 6002; 73 Ops.Cal.Atty.Gen. 172, 174 (1990).)

[3]Rule 2-100, to the extent that it applies to a prosecutor who communicates "directly or indirectly" with a party, would clearly extend to an investigator acting as the alter ego of the prosecutor. (Cf. *United States v. Jamil* (2nd Cir. 1983) 707 F.2d 638, 645; *United States v. Ryans* (10th Cir. 1990) 903 F.2d 731, 735.) Ordinarily, the ethical canons of the legal profession do not apply to an investigator acting independently of counsel. (*People v. Dickson* (1985) 167 Cal.App.3d 1047, 1057.)

[4] Rule 1-100 also states: ". . . Nothing in these rules shall be deemed to create, augment, diminish, or eliminate any substantive legal duty of lawyers . . . ."

We first note that in the State Bar's request for approval of Rule 2-100 by the Supreme Court in 1987, the Board of Governors commented (Office of Prof. Standards, "Request that the Supreme Court of California approve amendments to the Rules of Professional Conduct of the State Bar of California, and Memorandum and Supporting Documents in Explanation" (Dec. 1987), p. 26) as follows:

> "Subparagraph (C)(3) is new and is intended to make clear that where a statutory scheme or case law exists regarding communication with a represented party with respect to the subject matter of the representation, the statute or case overrides the rule."

The predecessor to Rule 2-100, former Rule 7-103, provided only that:

> "A member of the State Bar shall not communicate directly or indirectly with a party whom he knows to be represented by counsel upon a subject of controversy, without the express consent of such counsel. This rule shall not apply to communications with a public officer, board, committee or body."

Former Rule 7-103 was characterized by the Supreme Court as "necessary to the preservation of the attorney-client relationship . . ." (*Abeles v. State Bar* (1973) 9 Cal.3d 603, 609), and as having been "designed to permit an attorney to function adequately in his proper role and to prevent the opposing attorney from impeding his performance in such role" (*Mitton v. State Bar* (1969) 71 Cal.2d 525, 534, citing former Rule 12). Further, a State Bar ethics opinion construed the former rule as applying to a district attorney who knew that the defendant was represented by counsel even when no formal action had been filed. Specifically, in *People v. Sharp* (1983) 150 Cal.App.3d 13, 18, the court noted:

> ". . . In a formal ethics opinion, No. 1979-49, the Standing Committee on Professional Responsibility and Conduct of the State Bar construed rule 7-103 in a situation analogous to the one at hand. They concluded that a district attorney may not communicate with a criminal defendant he knows to be represented by counsel, even if that communication is limited to an inquiry to conduct for which the defendant has not been charged. Ethics opinions are advisory only and obviously not binding on the courts, but this one exemplifies a practical application of the rule. Because a prosecutor's position is unique - he represents authority and the discretion to make decisions affecting the defendant's pending case - his contact carries an implication of leniency for cooperative defendants or harsher treatment for uncooperative. Such contact intrudes upon the function of defense counsel and impedes his or her ability to negotiate a settlement and properly represent the client, whose interests the rule is designed to protect."

However, with the adoption of Rule 2-100, including its subparagraph (C)(3), we believe that a different analysis is now required.

Published in conjunction with the rules of professional conduct are "discussions" relating to the interpretation and application of certain of the rules.[5] In conjunction with Rule 2-100, the published comments describe the new "law enforcement" exception as follows:

"Rule 2-100 is intended to control communications between a member and persons the member knows to be represented by counsel unless a statutory scheme or case law will override the rule. There are a number of express statutory schemes which authorize communications between a member and person who would otherwise be subject to this rule. These statutes protect a variety of other rights such as the right of employees to organize and to engage in collective bargaining, employee health and safety, or equal employment opportunity. *Other applicable law also includes the authority of government prosecutors and investigators to conduct criminal investigations, as limited by the relevant decisional law."* (Emphasis added.)

Public prosecutors are frequently involved in the conduct of investigations, including the creation of investigative plans, the supervision of investigative personnel, the execution of search warrants, as well as the interview of witnesses. The investigation of criminal and criminal-related conduct constitutes an inherent aspect of prosecution which is clearly authorized. (*Triple A Machine Shop, Inc. v. State of California* (1989) 213 Cal.App.3d 131, 144-145; *People v. Superior Court (Aquino)* (1988) 201 Cal.App.3d 1346, 1349-1350; *Taliaferro v. City of San Pablo* (1960) 187 Cal.App.2d 153, 154.) In *Hicks v. Board of Supervisors* (1977) 69 Cal.App.3d 228, 241, for example, the court stated:

"Investigation and the gathering of evidence relating to criminal offenses is a responsibility which is inseparable from the district attorney's prosecutorial function. That the district attorney is charged with the duty of investigating as well as prosecuting criminal activity has been recognized by an unbroken line of California cases. In *Cunning v. County of Humboldt* [204 Cal. 31], it was held that . . . a district attorney had authority to employ persons to assist in the detection of crime and the gathering of evidence to be used in the prosecution of criminal cases . . . .

"In *Pearson v. Reed,* 6 Cal.App.2d 277, dealing with a prosecutor's immunity from civil liability, it was held that the district attorney's function in determining whether to institute criminal proceedings is discretionary, [and] that his authority to investigate the facts before acting is unlimited . . . ." (Fn. omitted.)

A district attorney is also charged with the investigation and prosecution of certain civil violations relating to, e.g., consumer fraud (§§ 17535-17536; Gov. Code, § 26509, subd. (a)), restraints on trade (§ 16750), unfair competition (§§ 17204, 17206), and the handling of hazardous materials (Health & Saf. Code, §§ 25181, 25182, 25299.02, 25516.1). (See also *Rauber v. Herman*

---

[5]Rule 1-100, paragraph (C) provides:

"Because it is a practical impossibility to convey in black letter form all of the nuances of these disciplinary rules, the comments contained in the Discussions of the rules, while they do not add independent basis for imposing discipline, are intended to provide guidance for interpreting the rules and practicing in compliance with them."

(1991) 229 Cal.App.3d 942, 948 [welfare fraud]; *Board of Supervisors v. Simpson* (1951) 36 Cal.2d 671, 674-675 [public nuisance abatement]; 64 Ops.Cal.Atty.Gen. 826, 831 (1981) [collection of fines for trespass]; 63 Ops.Cal.Atty.Gen. 457 (1980) [unfair employment patterns and practices].)

Consequently, a public prosecutor is authorized to investigate criminal matters and certain civil law enforcement cases.[6] It is expressly noted that we are concerned here only with civil cases of the type set forth in the above examples, which are essentially law enforcement in nature. In *People* v. *Pacific Land Research Co.* (1977) 20 Cal.3d 10, 17, the Supreme Court characterized such cases as follows:

"An action filed by the People seeking injunctive relief and civil penalties is fundamentally a law enforcement action designed to protect the public and not to benefit private parties. The purpose of injunctive relief is to prevent continued violations of law and to prevent violators from dissipating funds illegally obtained. Civil penalties, which are paid to the government (§ 17536, subds. (b) and (c); Civ. Code, § 3370.1) are designed to penalize a defendant for past illegal conduct. The request for restitution on behalf of vendees in such an action is only ancillary to the primary remedies sought for the benefit of the public. (*People* v. *Superior Court* (Jayhill) 9 Cal.3d 283, 286.) While restitution would benefit the vendees by the return of the money illegally obtained, such repayment is not the primary object of the suit, as it is in most private class actions."

Clearly, an integral element of an investigation consists of interviewing witnesses. The pertinent issue, therefore, as previously set forth in the "discussion" attendant to Rule 2-100, is whether the communications in question are "limited by the relevant decisional law."

Ordinarily, of course, counsel for all parties, absent a privilege (such as attorney-client or attorney work product), have a right to interview an adverse party's witnesses (if they are so willing) without the presence or consent of opposing counsel. (*Bobele v. Superior Court* (1988) 199 Cal.App.3d 708, 713.)

In a criminal cause, however, the accused has a right not to be a witness against himself, and to the assistance of counsel. (Cal. Const., art. I, § 15; U.S. Const., 5th, 6th Amends.) Do these constitutional provisions constitute a limitation upon the authority of a public prosecutor to conduct an interview during the investigative phase of a law enforcement proceeding?

In connection with the right against self incrimination, the United States Supreme Court has ruled that the accused must be advised of the right to counsel and to remain silent once the accusatory stage of the criminal process has been reached. (*Edwards v. Arizona* (1981) 451 U.S. 477, 481-482; *Miranda v. Arizona* (1966) 384 U.S. 436, 467-470.) Significantly, the right does not attach to an individual who is not yet in custody. (*People v. Morris* (1991) 53 Cal.3d 152, 197.) Quoting from a federal case, the California Supreme Court in *Morris* observed:

"`One of the primary purposes of preliminary questioning is to separate a group of persons possibly involved in a crime into those who should and those who should not be arrested - to decide whether all, some, or none should be charged. To turn all such questioning into custodial interrogation, requiring *Miranda* warnings

---

[6]An inspector acting within the scope of statutory legal authority in contacting a regulated business for purposes of inspection was "authorized by law." (ABA Committee on Ethics and Prof. Responsibility, Opn. No. 1496 (1983).)

in all cases, may help those eventually charged. But it could also seriously interfere with the process of information gathering and on occasion force the police to cast their net of arrest too wide, significantly interfering with the liberty of the innocent.'" (*Id.* at p. 198.)

In *People v. Dorado* (1965) 62 Cal.2d 338, 354, the court analyzed the right to counsel and to remain silent during a custodial interrogation, but then added:

"Nothing that we have said, of course, should be interpreted to restrict law enforcement officers during the investigatory stage from securing information from one who is later accused of the crime or from obtaining answers to their questions. Indeed, any statements obtained without coercion . . . given in the absence of the requirements for the accusatory stage, may be admitted into evidence."

Moreover, a defendant's Fifth Amendment rights are not retained after an effective waiver. (*People v. Sanders* (1990) 51 Cal.3d 471, 512.)

In connection with the Sixth Amendment right to counsel, an accused may not be interrogated without counsel when a criminal charge has been filed and the accused has retained counsel. (*Massiah v. United States* (1964) 377 U.S. 201; *People v. Duck Wong* (1976) 18 Cal.3d 178, 185.) However, the right attaches only when adversarial judicial proceedings have been initiated (*People v. Mattson* (1990) 50 Cal.3d 826, 868), "whether by way of formal charge, preliminary hearing, indictment, information, or arraignment" (*Kirby v. Illinois* (1972) 406 U.S. 682, 688-689). In *People v. Murphy* (1982) 127 Cal.App.3d 743, 749, the court stated:

"For Sixth Amendment purposes, the right to counsel `attaches only at or after the time that adversary judicial proceedings have been initiated' (*Kirby v. Illinois* (1972) 406 U.S. 682, 688); the California Supreme Court has held that there is no requirement for the presence of a prospective defendant's counsel during even a *custodial* interrogation occurring in the investigatory stage of a case, before the institution of criminal charges, if the prospective defendant has been properly advised of his *Miranda* rights. (*People v. Duck Wong* (1976) 18 Cal.3d 178, 184-187.)"

The right to counsel does not attach before the government's role shifts from investigation to accusation. In *People v. Mattson, supra*, 50 Cal.3d at 868, the court reiterated:

"We observed that `[f]ollowing the commission of a possible crime, it is essential that the police not be unduly hampered in their investigation. Under defendant's propos[al] . . . however, interrogation of suspects could be delayed indefinitely while the officers attempted to locate the suspect's counsel, notify him of the proposed interview, and either obtain his consent thereto or permit his participation therein. We find no convincing reasons why such a cumbersome procedure is necessary to protect a suspect's constitutional rights.' (*People v. Duck Wong, supra*, 18 Cal.3d at 187.)"

The foregoing is not intended to comprise a comprehensive summary of the law respecting the right against self incrimination or the right to counsel. It is, instead, sufficient to note

that criminal and civil[7] investigations by public prosecutors are both authorized and limited by law. However, they are not limited by either the Fifth or Sixth Amendment prior to the initiation of the accusatory stage. In our view, then, investigatory interrogations are "communications otherwise authorized by law" within the meaning of subparagraph (C)(3) of Rule 2-100.

We find support for our conclusion from cases interpreting the American Bar Association's Disciplinary Rule 7-104(A)(1) of the Code of Professional Responsibility. This rule provides:

"During the course of his representation of a client a lawyer shall not:

"(1) Communicate or cause another to communicate on the subject of the representation with a party he knows to be represented by a lawyer in that matter unless he has the prior consent of the lawyer representing such other party or is authorized by law to do so."

The federal circuit courts are generally in accord that this rule does not apply to pre-accusatory communications. (*United States v. Ryans* (10th Cir. 1990) 903 F.2d 731, 739-740 ["the perceived threat to the integrity of the attorney-client relationship is outweighed here by the government's interest in effective law enforcement"]; *United States v. Sutton* (D.C.Cir. 1986) 801 F.2d 1346, 1366; *United States v. Dobbs* (8th Cir. 1983) 711 F.2d 84, 86; *United States v. Kenny* (9th Cir. 1981) 645 F.2d 1323, 1339; *United States v. Lemonakis* (D.C.Cir. 1976) 485 F.2d 941, 955-956; cf. *United States v. Hammad* (2nd Cir. 1988) 858 F.2d 834, 839 ["a prosecutor is `authorized by law' to employ legitimate investigative techniques in conducting or supervising criminal investigations"].)

In *United States v. Fitterer* (8th Cir. 1983) 710 F.2d 1328, the prosecutors used an accomplice to record and transmit a conversation with the accused in the absence of his counsel. After explaining that the prosecutor's conduct impaired neither the defendant's Fifth nor Sixth amendment rights, the court concluded:

". . . Fitterer argues that because he had retained counsel for the grand jury investigation the prosecutor could communicate with him only through his attorney, and not through [the accomplice].

"We reject Fitterer's contention. Under his view, once the subject of an investigation retains counsel, investigators could no longer direct informants to gather more evidence. We do not believe that DR 7-104(A)(1) of the Code of Professional Responsibility was intended to stymie undercover investigations when the subject retains counsel. . . . We find no ethical violation on the part of the prosecutors." (*Id.* at p. 1333.)

However, three circuits have indicated that this rule either does or may apply to a pre-adversarial interview of a suspect *in custody*. (*United States v. Killian* (5th Cir. 1981) 639 F.2d 206, 210; *United States v. Durham* (7th Cir. 1973) 475 F.2d 208, 211; *United States v. Thomas* (10th Cir. 1973) 474 F.2d 110, 112; see also *Suarez v. State of Florida* (Fla. 1985) 481 So.2d 1201, 1206.)

---

[7]Statutory compliance actions by a prosecutor, such as those set forth at the outset, are essentially civil in nature (*People v. Superior Court (Kaufman)* (1974) 12 Cal.3d 421, 431-433), and do not invoke the full panoply of constitutional constraints which attend criminal proceedings.

In our view, Rule 2-100 does not apply to a custodial interrogation during the investigatory stage of the proceeding. In the absence of constitutional limitations, as previously discussed, a prosecutor is authorized by law to employ all legitimate means to investigate crime. Interrogation of suspects is a legitimate method of investigation. Such interrogations are "communications otherwise authorized by law" as provided in subparagraph (C)(3), which makes no distinction respecting custody, and are therefore expressly exempt from Rule 2-100's general prohibition.[8] Subparagraph (C)(3) of Rule 2-100 brings California law into conformity with the "law enforcement" exception to the American Bar Association's disciplinary rule.

While our conclusion is fully predicated upon the foregoing, it is further noted that Rule 2-100 pertains to communications with a "party" known to be represented by counsel. That term, as well as the phrases "while representing a client" and "the subject of the representation" appear to contemplate an adversarial relationship between litigants, whether in a criminal or civil setting. Such a relationship would, at best, be difficult to define during the investigative stage of a criminal proceeding. (*United States v. Ryans, supra*, 903 F.2d at 739; *State of New Jersey v. CIBA-GEIGY Corp.* (1991) 247 N.J.Super. 314, 321 [589 A.2d 180].)[9]

It is concluded that during the investigative phase of a criminal or civil law enforcement proceeding, Rule 2-100 does not prohibit a public prosecutor, or an investigator acting under the direction of a public prosecutor, from communicating with a person known to be represented by counsel, concerning the subject of the representation, without the consent of such counsel.

\* \* \* \* \*

---

[8]Communications by a prosecutor during the course of a civil or criminal law enforcement investigation with a public officer, board, committee, or body are not prohibited by the Rule 2-100 pursuant to subparagraph (C)(1).

[9]The State Bar has noted, however, in its discussion attendant to Rule 2-100 that such terms "are not limited to a litigation context."